[Civ. No. 27195.   Second Dist., Div. Three.   Nov. 12, 1964.]

JAMES L. CURNUTT, Plaintiff and Appellant, v. HERBERT C. HOLK, Defendant and Respondent.

Paul S. Garstang for Plaintiff and Appellant.

Parker, Stanbury, Reese & McGee and Daren T. Johnson for Defendant and Respondent.

NOURSE, J. pro tem.*—Plaintiff appeals from a judgment dismissing his action after a general demurrer to his first amended complaint had been sustained without leave to amend. The action is one to cover damages for personal injuries sustained by the plaintiff through the alleged negligence of the defendant.

In substance the facts alleged in plaintiff's first amended complaint are:[1] On October 8, 1959, the day of the accident in question, plaintiff was a lieutenant colonel and defendant was a captain in the United States Air Force. Both plaintiff

---

[1]Wherever the matters hereinafter in the statement of pleaded facts are italicized they are statements made in the original complaint which were omitted without explanation in the amended complaint. (*Wennerholm* v. *Stanford Univ. School of Medicine*, 20 Cal.2d 713 [128 P.2d 522, 141 A.L.R. 1358].)

*Retired judge of the superior court sitting pro tempore under assignment by the Chairman of the Judicial Council.

and defendant were on active duty at the Vandenberg Air Force Base, Santa Barbara County, California, a military reservation, jurisdiction over which had been ceded by this state to the United States.[2] On that date the commander of the base ordered six officers, including plaintiff and defendant, to kill deer *which were a hazard to aircraft in the vicinity of the base runway*. The base commander ordered that no rifles should be carried on the hunt but only shotguns with rifled lead slugs should be used, that no shooter should fire unless he had a back-up man behind him observing the surrounding terrain for any potential hazard, and that the hunt should be conducted in a safe manner. The officers ordered to conduct the exercise were divided into three groups, two officers being assigned to a motor vehicle, one officer driving and the other in the back seat in order to comply with the base commander's order. The three vehicles proceeded along the edge of the runway in heavy brush. After they had proceeded approximately half the length of the runway the vehicle in which the defendant was riding encountered mechanical difficulties. Plaintiff told the occupants of the stalled vehicle to leave it and mount his vehicle and the defendant and the other occupant of his vehicle entered the rear of the vehicle driven by the plaintiff. After driving for a few minutes plaintiff decided to cross the runway and while waiting for clearance from the control tower the defendant left the rear of the vehicle and entered the cab in the seat beside the plaintiff. He was then carrying a rifle and a shotgun. He placed the shotgun between the parties alongside of plaintiff's shotgun with the barrels leaning back against the seat and held the rifle between his knees. Plaintiff then proceeded to drive across the runway. At this time it was dark and the headlights of the vehicle were on. While proceeding across the runway plaintiff and defendant saw a deer 200 or 300 yards ahead in the beam of the headlights and immediately thereafter saw three other deer about 40 yards ahead in the heavy brush alongside the runway. Plaintiff stopped the vehicle and defendant started to leave the vehicle with his rifle. Plaintiff reminded him that a rifle could not be used. Defendant then reached for his shotgun while still holding the rifle with the result that a large lead slug entered plaintiff's right arm and he was permanently crippled.[3]

---

[2] Statutes of 1939. Jurisdiction was accepted by the United States in January 1943 in accordance with the provisions of 50 U.S.C.A. § 175.

[3] The complaint does not allege which gun was discharged but it is evident from the facts pleaded that it was the shotgun for it was that

The question presented on this appeal: Is one member of the Armed Forces of the United States liable to another member of the Armed Forces for injuries caused by his negligence while both members were engaged in carrying out a lawful order of the superior officer?

It is established that a member of the Armed Forces may not be held liable to a civilian for injuries resulting from his act in carrying out the orders of a superior unless the order is not only illegal but its illegality would be at once palpable to one possessing the knowledge which is to be expected of him who obeys it. (*Armstrong* v. *Sengo*, 17 Cal. App.2d 300, 307 [61 P.2d 1188]; *Herlihy* v. *Donohue*, 52 Mont. 601 [161 P. 164, 167]; *Neu* v. *McCarthy*, 309 Mass. 17, 22-23 [33 N.E.2d 570, 573-574, 133 A.L.R. 1291, 1295-1296]; 6 C.J.S. 420; 36 Am.Jur., § 116, p. 264; Rest., Torts, vol. 1, pp. 343, 344.) The authorities we have cited are not decisive of the question here before us for none of them concerned the rights and liabilities of members of the Armed Forces *inter sese* nor have we been cited to or found any decisions deciding that question. It is clear, however, that the rights and liabilities of members of the Armed Forces would be the same as that affecting civilians if the order under which they were acting was not only unlawful but its illegality was at once palpable to the subordinates carrying out the order.

It is appellant's contention that the order given by the commander of the base to the plaintiff and the defendant was unlawful in that it was in violation of the game laws of the State of California in that the deer season was closed on October 8, 1959, and it was unlawful at any time to hunt deer between one hour after sunset and one hour before sunrise of the following day or to use artificial light to assist in the taking of deer. With this contention we cannot agree. The incident in question occurred on land jurisdiction over which had been ceded to the federal government and the state had no right to enforce its game laws within the boundaries of that reservation. It is true that the laws of the United States (10 U.S.C.A. § 2671), make it the duty of the Secretary of Defense to require that all hunting and fishing upon a military reservation be in accordance with the fish and game laws of the state in which the reservation is located and require him to prescribe regulations to carry out this statute. It was, however, also the duty of the commander of the base to

gun which was alongside the plaintiff and it was only that gun which fired a slug.

maintain the runway in a safe condition for the operation of aircraft and he would be subject to disciplinary action if he neglected so to do and thus suffered any military property of the United States to be lost, damaged or destroyed. (10 U.S.C.A. § 908.) It was the province of the commanding officer to decide whether the regulations as to hunting for sport on the reservation were applicable to action taken by him to kill deer which were a hazard to the operation of aircraft on the runway. Certainly it cannot be said that the order was one which was so palpably unlawful as to justify disobedience of it by defendant.

The appellant, however, contends that defendant was carrying out the order in an unlawful manner in that he took along with him a rifle contrary to the orders of the commander. There are no facts pleaded, however, which could make this violation of the order a proximate cause of the injury to plaintiff. The complaint does not charge that it was the rifle which caused the injury and, as we have heretofore pointed out, the inference is clear from the facts pleaded that it was the shotgun which was negligently handled.

Undoubtedly under the facts alleged in the complaint a cause of action would be stated against the defendant were the parties civilians engaged in a hunting expedition. ▉ The relationship of the parties, however, was not that of civilians but of members of the Armed Forces of the United States and the relationship between the government and the members of the Armed Forces while engaged in line of duty is definitely federal in character. (*Feres* v. *United States,* 340 U.S. 135 at pp. 142, 143 [71 S.Ct. 153, 95 L.Ed. 152 at pp. 158, 159]; *United States* v. *Standard Oil Co.,* 332 U.S. 301 [67 S.Ct. 1604, 91 L.Ed. 2067].)

The rights and liabilities of members of the Armed Forces of the United States arising from acts occurring while acting under orders in line of duty is one of federal military law. We have not been cited to or found any federal statute which gives an officer or enlisted man of the Armed Forces of the United States any right of action against another member of the Armed Forces for negligent injuries sustained while both were acting in line of duty pursuant to the orders of their superior. The effect upon discipline of granting or withholding from a member of the Armed Forces the right to sue another member of the Armed Forces for negligence in carrying out the lawful orders of his superior is a matter addressed to the Congress of the United States and we are of the opinion

that until Congress has created a liability for such acts liability does not exist.

The judgment is affirmed.

Shinn, P. J., and Ford, J., concurred.