110 N.J. Super. 255 (1970)
265 A.2d 173
BERTHA L. CZYZEWSKI AND JOHN CZYZEWSKI, INDIVIDUALLY IN HIS OWN RIGHT, PLAINTIFFS-APPELLANTS,
v.
MARTIN J. SCHWARTZ AND PORTER'S BODY SHOP, INC., A CORPORATION OF THE STATE OF NEW JERSEY, DEFENDANTS-APPELLANTS, AND TROOPER WARREN FERRY, OF THE NEW JERSEY STATE POLICE, INDIVIDUALLY, JOINTLY, SEVERALLY AND/OR IN THE ALTERNATIVE, DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued January 5, 1970.
Decided May 26, 1970.
*256 Before Judges GOLDMANN, LEWIS and MATTHEWS.
Mr. William S. Zink argued the cause for appellants (Messrs. Bleakly, Stockwell, Zink & McGeary, attorneys for Martin J. Schwartz; Messrs. McGuire, Healey & Green, attorneys for the Czyzewskis; Messrs. Kisselman, Devine, Deighan and Montano, attorneys for Porter's Body Shop, Inc.)
Mrs. Priscilla Read Chenoweth, Deputy Attorney General, argued the cause for respondent (Mr. George F. Kugler, Jr., Attorney General, attorney).
The opinion of the court was delivered by GOLDMANN, P.J.A.D.
Pursuant to leave granted, plaintiffs appeal from a Law Division order dismissing their complaint against defendant Trooper Ferry in their action to recover damages resulting from a rear-end collision.
On November 29, 1966, at about 9 A.M., Troopers Ferry and Miller were conducting a radar operation on Route 73 (northbound) in Voorhees Township, Camden County. Miller was operating the radar machine some 0.2 miles to the south of where Ferry was acting as interceptor. Traffic was light, visibility clear, and the road surface dry. Miller radioed Ferry to stop a white Cadillac going north in his direction. Ferry observed two vehicles approaching in the slow lane. The car in front, owned by plaintiff John Czyzewski and driven by his wife Bertha, was some distance *257 ahead of the white Cadillac driven by defendant Schwartz and loaned to him by defendant Porter's Body Shop, Inc., while his car was being repaired.
In the affidavit filed by Ferry in support of the motion to dismiss the complaint, he stated that
* * * as is the normal procedure, when the vehicle was approximately 300 feet away, I began to motion with a full sweeping motion of my right hand and arm for [the Czyzewski car] to continue on * * *. As her car came within 50 feet of myself, I then with my right arm straight, pointed directly at the driver of the Cadillac which was behind Mrs. Czyzewski. Failing to get his [Schwartz'] attention and noting he was applying brakes for an emergency stop, I then turned to look at the Czyzewski car. At this point I noted Mrs. Czyzewski with her mouth agape and both hands off the steering wheel, pointing with both hands to herself and jamming the brakes on her car. * * *
After the Czyzewski car had traveled about 20 feet, it was struck in the rear by the Cadillac. Ferry averred that he was in no way negligent nor did he improperly or incorrectly signal Mrs. Czyzewski so as to cause her to stop immediately; rather, she misinterpreted his signal and stopped her car abruptly. (We note here that Ferry signaled from where he was standing in the fast lane.)
In her affidavit opposing the Ferry motion Mrs. Czyzewski stated that she was traveling at a moderate rate of speed when Ferry motioned with his left hand and thumb for her to pull over, and when she did so her car was struck from the rear. At no time was her mouth agape and both hands off the steering wheel, and at no time did she point with her hands to herself, as alleged in the Ferry affidavit. As in her complaint, she contended that the trooper was negligent and improperly signaled her, thereby creating an emergency situation which required her to stop immediately, with the resulting rear-end collision.
Defendant Schwartz also filed an affidavit in which he said that as the two cars approached, the trooper suddenly began motioning with his arms. He made the same motion at the same time to both drivers, but Schwartz thought that *258 the trooper meant for the Czyzewski car to stop, since he started motioning while that car was still approaching him. There was no warning of an impending stop; Schwartz could not pass to the left because the trooper was standing in the fast lane; and although he applied his brakes, the Cadillac ran into the stopped Czyzewski car.
Mrs. Czyzewski had sued to recover damages for personal injuries sustained, joining Schwartz, Porter's Body Shop, Inc., and Ferry, "of the New Jersey State Police," individually, jointly, severally and/or in the alternative. Her husband sued per quod and for property damage. Schwartz answered, denying negligence and setting up the defenses of contributory negligence and the sole negligence of defendant Ferry, from whom he demanded contribution.
The Attorney General filed an answer on behalf of Ferry and the State of New Jersey, Department of Law and Public Safety, Division of State Police, although nowhere did the complaint name the State or any agency thereof as a defendant, or charge that Ferry was acting as an agent of the State. Negligence was denied, and by way of affirmative defenses it was alleged that the complaint failed to state a claim upon which relief could be granted; what Ferry did was within the scope of his official duties and in accordance with lawful and proper police procedures; the complaint was in essence a suit against the State and would not lie; Ferry enjoyed the State's immunity from suit, and plaintiffs were contributorily negligent.
Porter's answer denied negligence, alleged contributory negligence, and sought contribution from defendants Schwartz and Ferry.
Despite the answer filed by the Attorney General, he was permitted without objection to move on behalf of Ferry for a summary judgment of dismissal because the complaint failed to state a claim upon which relief could be granted and Ferry was entitled to judgment as a matter of law. The affidavits in support of and opposition to this motion have been summarized above.
*259 At the hearing on the motion all agreed that the State could under existing law claim sovereign immunity. (But see Willis v. Department of Conservation and Economic Development, 55 N.J. 534 (April 20, 1970), holding that in a proper case the State could, after January 1, 1971, be held liable in tort.) Counsel for plaintiffs pointedly remarked that his clients were not suing the State, but an individual, Ferry. Nonetheless, the trial judge was of the opinion that Ferry was an alter ego of the State and as such not subject to suit; he did not think that "on the trial level we ought to open a door this wide," leaving that to the appellate courts. Accordingly, he entered an order dismissing the complaint and the cross-claims for contribution as to defendant Ferry.
Although a public officer or employee is not absolved from liability for his private and personal torts, the question of liability has been left in a legal twilight zone with respect to responsibility for negligent acts committed in the course of his official duties. See Prosser on Torts, § 126, at 1013 et seq. (1964); 2 Harper and James, The Law of Torts, § 29.10, at 1638 et seq. (1956); Kisielewski v. State, 68 N.J. Super. 258, 262 (App. Div. 1961). Prosser observes (at 1015) that while federal courts have tended to extend immunity down the scale to all officers of lower degree as long as they act within the scope of their duties, state courts, with some exceptions, have been much more disposed to restrict absolute immunity to superior officers only. See also, Annotations, 40 A.L.R. 1358 (1926) (annotation to Florio v. Mayor, etc., Jersey City, 101 N.J.L. 535 (E. & A. 1925)); 53 A.L.R. 381 (1928); 60 A.L.R.2d 873, particularly § 5, at 890 (1958); 43 Am. Jur., Public Officers, § 279 and §§ 258, 259 (1942).
As to officers occupying a position in the lower governmental eschelons, Prosser observes that
* * * the whole situation has been much complicated by the drawing of another line of distinction, which in effect achieves a rather uneasy compromise. The courts have set up a finespun and more or less *260 unworkable distinction between acts which are regarded as "discretionary," or "quasi-judicial," in character, requiring personal deliberation, decision and judgment, and those which are merely "ministerial," amounting only to an obedience to orders, or the performance of a duty in which the officer is left no choice of his own. * * * [at 1015]
It is practicably impossible to draw a clear and definite line in applying the discretionary-ministerial distinction. As the court said in Ham v. Los Angeles County, 46 Cal. App. 148, 162, 189 P. 462, 468 (D.C. App. 1920), "It would be difficult to conceive of any official act, no matter how directly ministerial, that did not admit of some discretion in the manner of its performance, even if it involved only the driving of a nail."
Florio v. Jersey City, above, dealt with a foreman who negligently ran the fire truck he was driving into a horse and wagon. The court reviewed the cases and held him liable. In Kisielewski v. State, above, an inmate of the State Home for Girls sued employees of that institution for injuries suffered when she was burned while working in the kitchen. This court held that whether a public officer or employee is clothed with immunity in the performance or nonperformance of an act in the course of his public duties, "depends upon the nature of his duties and the nature and quality of the allegedly tortious act or omission with which he is charged." In affirming the denial of defendants' motion for summary judgment, the court, after noting the discretionary-ministerial dichotomy, observed that the complaint charged negligence in terms so broad that there was a possibility of proof which could be the basis of liability or nonliability of any or all of the individual defendants. For this reason, there was a need for full disclosure of their duties, their acts or omissions, and the relation of these to plaintiff's claims which was indispensable to a proper determination of the case. Cf. Bedrock Foundations, Inc. v. Geo. H. Brewster & Son, Inc., 31 N.J. 124 (1959).
*261 The Attorney General cites us to State v. Dantonio, 18 N.J. 570 (1955), and Gallena v. Scott, 11 N.J. 231 (1953). Dantonio is irrelevant because it merely validated the use of radar in apprehending speeders. Gallena is inapposite because plaintiff was suing state officials for his salary, and the court correctly saw the State as the real defendant in interest and dismissed the suit.
The State argues that the enforcement of traffic regulations is an important governmental function, and to hold Ferry for alleged negligent signaling would make it difficult, if not impossible, to recruit state troopers; further, troopers would be less zealous in performing their duties. We find unpersuasive an argument so flatly stated in so unsupported and conclusionary a manner. The State carries insurance for automobiles driven by state troopers, and although it does not presently insure them for other negligent acts committed in the course of their regular duties, it could readily do so. Any attempt to distinguish between negligence while driving a patrol car and negligence while controlling traffic on the roads would, in our view, be illogical as well as futile. Whatever substantive content there might be in the argument just referred to would readily and simply be resolved by the State purchasing comprehensive coverage for the State Police. Such insurance would be socially useful in spreading risks. It is unfair to put the risk of an occasional careless act by a trooper in the line of duty on either the innocent victim or the trooper, where what he does (or does not do) is not lacking in good faith or does not constitute gross negligence.
We have no hesitation in declaring that the trooper's signal in this case did not involve the exercise of discretion beyond a ministerial function. It was an act done in the regular course of his patrol duties  as he said in his affidavit, by way of "normal procedure"  in response to a radio signal given him by Trooper Miller who was in charge of the radar equipment a fifth of a mile away. Unless Ferry chose to disregard completely Miller's order to *262 stop the white Cadillac, he had to signal the approaching car to stop for a traffic violation. There was no exercise of judgment involved, but only routine procedure.
We hold that it was improper to let Ferry out of the case, and accordingly we remand the matter for a full trial with respect to all defendants.
Reversed and remanded.
MATTHEWS, J.A.D. (dissenting).
In my view the facts of this case, insofar as they deal with the activities of Trooper Ferry, come within the interdiction of our Supreme Court contained in Willis v. Department of Conservation and Economic Development, 55 N.J. 534 (1970) against actions in tort against the State until January 1, 1971.
The majority takes the position that it would be futile to attempt to distinguish between negligence of a state trooper while driving a patrol car and his negligence while controlling traffic on the roads. I disagree. Only an indidividual employed by the State as a state police officer is permitted to conduct a radar trap or otherwise control the flow of traffic on state highways. In carrying out these functions, a state police officer executes the power of the State granted to it both under the Constitution and by the Legislature. A state police officer is permitted to exercise radar trap and traffic control duties only after he has been certified to become competent to perform such duties by the State itself thorugh its training agency. Negligent performance of such duties must necessarily involve the negligence of the State, since it is the State who has certified the indiivdual as being competent to carry out the police function. Such is not the case in a situation when a trooper negligently operates a patrol car, either marked or unmarked, a fireman negligently operates a fire department vehicle, or an employee in a state institution supervises the operation of a kitchen in a careless manner.
The majority has no hesitation in finding that Trooper Ferry's signal in this case did not involve the exercise of *263 discretion beyond a ministerial function. This finding is not helpful. What he did do was carry out a routine state procedure. His activity as an individual was, in my judgment, indistinguishable from his activity as a state police officer.
I would affirm.