WALTER PHILLIPS, PLAINTIFF-APPELLANT, v. STATE OF NEW JERSEY, DEPARTMENT OF DEFENSE, NEW JERSEY STATE MILITIA, MARK CURIALE AND CHARLES WATSON, DEFENDANTS-RESPONDENTS.

and

FMC CORPORATION, DEFENDANT-APPELLANT.

Argued September 24, 1984—Decided January 21, 1985.

*Joseph Albanese,* a member of the Maine bar, argued the cause for appellant Walter Phillips (*Samuel A. Weiner,* attorney).

*David R. Kott* argued the cause for appellant FMC Corporation (*McCarter & English,* attorneys; *Eugene M. Haring,* of counsel).

*Jonathan L. Williams,* Deputy Attorney General, argued the cause for respondents (*Irwin I. Kimmelman,* Attorney General of New Jersey, attorney; *Michael R. Cole,* First Assistant Attorney General, *Theodore A. Winard,* Assistant Attorney General, and *Deborah T. Poritz,* Deputy Attorney General, of counsel; *Jonathan L. Williams, Madeleine W. Mansier* and *William Harla,* Deputy Attorneys General, on the briefs).

The opinion of the Court was delivered by

SCHREIBER, J.

Plaintiff, Walter Phillips, a member of the New Jersey State Militia, filed a complaint in the Superior Court seeking damages for personal injuries he allegedly suffered during a military training maneuver at Fort Drum, New York. Plaintiff charged that on or about August 17, 1978, Private Charles Watson, the driver of an armored personnel carrier, and Lieutenant Mark Curiale, the officer in charge, caused the carrier to be operated "in such a negligent, careless, reckless, dangerous, hazardous

and perilous manner that the plaintiff was so thrown and propelled about within" the carrier that he fractured a cervical spine vertebra and became a quadriplegic. Plaintiff also asserted that FMC Corporation had negligently manufactured and designed the carrier without precautionary or safety devices, resulting in plaintiff's injuries. The defendants named were the State of New Jersey-Department of Defense-New Jersey State Militia (Department of Defense), Watson, Curiale, and FMC Corporation.

Plaintiff attached to and incorporated in his complaint a sworn statement made on October 26, 1978 on a form of the Office of the Deputy Chief of Staff for Personnel of the Department of Defense. The statement set forth a more detailed explanation of the accident. In it plaintiff claimed that he was a passenger in the carrier, that defendant Curiale told defendant Watson to drive faster, that the carrier began hitting large ditches, that plaintiff slid off the seat a number of times striking his back on the seat, and that, when the carrier struck another large ditch, "everyone fell on [him]." Plaintiff further stated that while his back bothered him initially, the pain subsided the same day, but that on August 20, 1978, when plaintiff was visiting his brother, his "legs gave out and [he] blacked out." When he awoke, he was unable to move. Plaintiff is now a quadriplegic.

The Attorney General filed answers on behalf of Watson, Curiale, and the Department of Defense. *See N.J.S.A.* 59:10A–1 to –6. Other than admitting (1) the military status of plaintiff, defendant Watson, and defendant Curiale, (2) the fact that the operator of the carrier was Watson, and (3) receipt of the sworn affidavit attached to the complaint, these three defendants filed general denials, set up ten separate defenses, and filed a cross-claim for contribution against codefendant FMC Corporation. Defendant FMC Corporation similarly filed a general denial, propounded five separate defenses, and asserted a cross-claim for contribution against its codefendants.

The trial court granted a motion for summary judgment by defendants Watson, Curiale, and the Department of Defense. The court concluded in a letter opinion that the military compensation law, *N.J.S.A.* 38A:13–1 to –9, incorporated by reference the scheme of the Workers' Compensation Act, *N.J.S.A.* 34:15–7 to –35.22. It reasoned that since an employee's exclusive remedy under that Act was workers' compensation, plaintiff's exclusive remedy against the Department of Defense was under the military compensation law. The court likewise held that no action could lie against a fellow member of the militia because the Workers' Compensation Act prevented an injured employee from recovering damages from a fellow employee for injuries received arising out of and in the course of employment. Utilizing the rationale that third-party tortfeasors are barred from seeking contribution from an employer who has paid workers' compensation, the trial court dismissed the FMC cross-claim.

Upon plaintiff's appeal and defendant FMC's cross-appeal, the Appellate Division affirmed, substantially for the reasons stated by the trial court. We granted plaintiff's and defendant FMC's joint petition for certification. 96 *N.J.* 279 (1984).

We note at the outset that defendants Watson, Curiale, and the Department of Defense relied solely on their brief and oral argument before the trial court in support of their motion for summary judgment. No testimony or affidavits were produced. Accordingly, it would appear that the motion was effectively a motion for judgment on the pleadings. Therefore the court must accept as true all the allegations of the complaint.

I

A.

It is clear that at common law the State was immune from liability for personal injuries suffered by an individual as a result of the State's action or inaction. *Cf. Russell v. Men of Devon*, 100 *Eng.Rep.* 359 (K.B.1788) (civil action for property

damage cannot be maintained against inhabitants of county); Pound, "The Tort Claims Act: Reason or History?" 30 *Nat'l A. Claimants' Compensation Att'ys* 404, 406 (1964). The doctrine of sovereign immunity became embedded in our jurisprudence. *See, e.g., Strobel Steel Constr. Co. v. State Highway Comm'n*, 120 *N.J.L.* 298, 301 (E. & A. 1938); *Lodor v. Baker, Arnold & Co.*, 39 *N.J.L.* 49, 50 (Sup.Ct.1876). The courts occasionally whittled away at sovereign immunity. *See, e.g., Cloyes v. Delaware Township*, 23 *N.J.* 324, 327 (1957). From time to time the State waived its immunity by providing that particular State agencies might sue or be sued. *See Taylor v. New Jersey Highway Auth.*, 22 *N.J.* 454, 467 (1956); *The Report of the Attorney General's Task Force on Sovereign Immunity* 31 (1972).

The first movement in that direction with respect to soldiers was the enactment of *L.*1937, *c.* 49, Art. XV, §§ 1–11, the military compensation law. Presently codified at *N.J.S.A.* 38A:13–1 to –9, the statute provides a remedy against the State for soldiers in the New Jersey National Guard who suffer an injury, disease, or disability in the line of duty. *N.J.S.A.* 38A:13–1. Prior to that enactment, a National Guard soldier injured in the line of duty had no recourse against the State for temporary or permanent disabilities.

The Legislature undoubtedly knew that the military compensation law, when passed in 1937, was a militiaman's sole and exclusive remedy against the State. The Legislature next acted when it adopted the Tort Claims Act in 1972. *N.J.S.A.* 59:1–6 of the Tort Claims Act stated that nothing in that Act "shall be construed to affect, alter or repeal any provision of the military and veterans law of this State, except as specifically provided in repealer section 59:12–2 * * *." Section 59:12–2 did not refer to *N.J.S.A.* 38A:13–1 to –9. Accordingly, the law concerning the State's liability for injuries received in the line of duty remained unimpaired. We therefore hold that the sole and exclusive remedy against the State for an injury, disease, or

disability incurred by a national guardsman in the line of duty is the remedy afforded in *N.J.S.A.* 38A:13–1.

Some mention must be made of *Feres v. United States*, 340 *U.S.* 135, 71 *S.Ct.* 153, 95 *L.Ed.* 152 (1950), upon which defendants rely. *Feres* involved three separate causes of action against the United States under the Federal Tort Claims Act for injuries suffered by members of the regular armed forces. The Supreme Court held that the Federal Tort Claims Act did not create "a new cause of action dependent on local law ·for service-connected injuries or death due to negligence." *Id.* at 146, 71 *S.Ct.* at 159, 95 *L.Ed.* at 161. The statutory interplay between the New Jersey military compensation law and the New Jersey Tort Claims Act was not present in *Feres*. While we conclude that the waiver of sovereign immunity contained in the New Jersey Tort Claims Act does not extend an additional remedy to national guardsmen injured in the line of duty, we do not rely on the *Feres* rationale.[1]

---

[1]Some commentators have sharply criticized *Feres*. *See* Hitch, "The Federal Tort Claims Act and Military Personnel," 8 *Rutgers L.Rev.* 316 (1954); Rhodes, "The *Feres* Doctrine After Twenty-Five Years," 18 *A.F.L.Rev.* 24 (1976); Note, "Federal Liability to Personnel of the Armed Forces," 20 *Geo.Wash.L.Rev.* 90 (1951); Note, "From *Feres* to *Stencel:* Should Military Personnel Have Access to FTCA Recovery?" 77 *Mich.L.Rev.* 1099 (1979); Note, "Jaffee v. United States: Feres Doctrine at the Cliff's Edge?" 42 *U.Pitt.L.Rev.* 115 (1980).

Until 1981 the Federal Tort Claims Act did not include members of the National Guard in its definition of employees and therefore no action would lie against the federal government for injuries caused to a third person by the negligence of a member of the National Guard on training duty pursuant to federal statutes. *See Spangler v. United States*, 185 *F.Supp.* 531 (S.D.Ohio, 1960). However, in that year the definition of "employee of the government" was redefined to include "members of the National Guard while engaged in training or duty," in accordance with federal law. 28 *U.S.C.* § 2671. The amendment has no effect on the *Feres* doctrine, which would prohibit a suit under the Federal Tort Claims Act by a member of the National Guard against the federal government or a fellow member of the National Guard for injuries incurred in the line of duty due to the negligence of the fellow member. *See Stencel Aero Eng'g Corp. v. United States*, 431 *U.S.* 666, 97 *S.Ct.* 2054, 52 *L.Ed.*2d 665 (1977).

One result intended by the New Jersey Tort Claims Act was to permit third parties to sue the State for the tortious conduct of a militiaman acting within the scope of his employment. *See N.J.S.A.* 59:2-2. Where a military employee might be properly held liable for injury to a third party, so might the State. To achieve this result, the Legislature, as part of the New Jersey Tort Claims Act, repealed that section of the military law, *N.J.S.A.* 38A:4-9, that provided that members of the organized militia ordered into active State service were not civilly or criminally liable for acts done in performance of their duty. *N.J.S.A.* 59:12-2. National guardsmen were placed in the same posture vis-a-vis third parties as other public employees. If a member of the militia not in the line of duty is injured by a member of the militia acting in the line of duty, the State may well be responsible. *See Brooks v. United States,* 337 *U.S.* 49, 69 *S.Ct.* 918, 93 *L.Ed.* 1200 (1949). But the retention of the military compensation law by the Tort Claims Act, *N.J.S.A.* 59:1-6, indicates that the Legislature did not intend to open the State to civil liability to servicemen whose remedy against the State had already been provided for by the military compensation law.[2] Indeed, the Legislature explicitly provided in the New Jersey Tort Claims Act that the State was not to be held liable for injury "[e]xcept as otherwise provided" by the Act. *N.J.S.A.* 59:2-1.

---

[2]Plaintiff properly points out that the New York State Court of Claims Act expressly disclaims State liability "with respect to the claim of any person in, or formerly in, the military service of the state, arising out of or in connection with such person's military service on behalf of the state * * *." *N.Y.Ct.Cl. Act,* § 8-a (McKinney Supp.1983–1984). *The Report of the Attorney General's Task Force on Sovereign Immunity* (1972), which served as the basis for our Tort Claims Act, specifically considered the New York Court of Claims Act. *Id.* at 133–58. But the failure of our Legislature to adopt similar language does not undercut the proposition that the Legislature effectively achieved that same purpose by its explicit retention of pre-existing law. *N.J.S.A.* 59:1-6. We note, moreover, that the Legislature possesses a ready remedy if we have misinterpreted the effect of the Tort Claims Act upon the military law. *See Kelly v. Gwinnell,* 96 *N.J.* 538, 555 (1984); *Renz v. Penn Central Corp.,* 87 *N.J.* 437, 461 n. 8 (1981).

### B.

■ Although we find that the military compensation law affords the exclusive remedy against the State for national guardsmen injured in line of duty, we do not reach that conclusion by reading article 2 of chapter 15 of the Workers' Compensation Act into the military compensation law as urged by the Attorney General. The crucial provision of the military compensation law, *N.J.S.A.* 38A:13–1, reads as follows:

> A member of the organized militia who incurs an injury, disease or disability in the performance of duty ordered by competent authority, and such injury, disease or disability is determined to be in line of duty and the claim is approved by the Chief of Staff, shall be entitled *to medical care and to receive the same compensation for temporary or permanent disabilities as is provided in article 2 of chapter 15 of Title 34.* In the event such member incurs death under the same conditions, the dependent members of the family of the deceased, if any, shall be entitled to compensation as provided in article 2 of chapter 15 of Title 34.
>
> As used in this chapter "in line of duty" means that the injury, disease, disability or death has been sustained in the discharge of duty and is not due to any voluntary act or traceable to willful neglect, fault or his own vicious habits. [Emphasis added.]

The trial court interpreted this statute to incorporate by reference "the limitations, requirements and case law principles of [article 2 of chapter 15 of Title 34] subject to the remaining provisions of *N.J.S.A.* 38A:13–1 *et seq.*" Article 2 includes a provision that an employee who elects to seek workers' compensation surrenders all other remedies against the employer for the same injuries. *N.J.S.A.* 34:15–8. The court concluded that this exclusivity provision of the Workers' Compensation Act was "equally applicable to a claim arising out of" the military compensation law. We find, rather, that the language and legislative history of the military compensation law indicate that its provision for "compensation * * * as * * * provided in article 2" of the Workers' Compensation Act referred only to the schedules of benefits contained in article 2.

Returning to the genesis of *N.J.S.A.* 38A:13–1, *L.*1937, *c.* 49, Art. XV, § 1, we observe that the first line of section 1 of Article XV and the title to *R.S.* 38:11–1, as it was codified,

referred to "[m]edical service and compensation for injuries."[3] The statute next provided that military personnel would receive from the State "medical service and compensation [for injury, disability, or disease] in accordance with" article 2 of the Workers' Compensation Act. The specific provision for medical service and compensation indicates that the Legislature intended to include only those two aspects of the Workers' Compensation Act. *See, e.g., N.J.S.A.* 34:15–15 (medical and hospital service); *N.J.S.A.* 34:15–12, –13 (compensation for injury and death). The identification in the military compensation law of these particular items of compensation is inconsistent with an intent to include all provisions of article 2.

Had the Legislature intended to incorporate article 2 of the Workers' Compensation Act in toto, there would have been no necessity to particularize "medical care," since that provision is part of article 2. Rather, use of the phrase "medical care" signified a particular obligation to be imposed on the State in the event a militiaman suffered injury. So, too, the Legislature specifically mandated that the compensation for a national guardsman under the military compensation law for temporary or permanent disabilities be the same as that provided by the Workers' Compensation Act. The Legislature contemplated that changes made in the compensable schedules of the Workers' Compensation Act would be reflected in the military compensation law.

[3] It is true that outlines, analyses, cross references, headnotes, and source notes are not to be deemed part of any statute in New Jersey. *N.J.S.A.* 1:1–6. For example, New Jersey failed to adopt Section 1–109 of the Uniform Commercial Code, which would have provided that section captions be part of the statute. *New Jersey Study Comment* to *N.J.S.A.* 12A:1–109. Nevertheless, a title may be utilized in the construction of a statute so long as it does not serve to expand the legislation beyond what was enacted. *See Swede v. City of Clifton,* 39 *N.J.Super.* 366, 377–78 (App.Div.), aff'd, 22 *N.J.* 303 (1956); *St. John the Baptist Greek Catholic Church v. Gengor,* 121 *N.J.Eq.* 349, 353 (E. & A.1937). It may even be the case that where a headnote or section caption is enacted within the text of a statute, the headnote *is* part of the statute notwithstanding *N.J.S.A.* 1:1–6. *See State v. Brown,* 188 *N.J.Super.* 656, 661–62 (Law Div.1983).

Other provisions in article 2 of the Workers' Compensation Act confirm the conclusion that the Legislature did not incorporate all of article 2 into the military compensation law. The military compensation law expressly stated that compensation for illness or disease was not limited to disabilities covered by those occupational diseases enumerated in the Workers' Compensation Act. *L.*1937, *c.* 49, Art. XV, § 2; *R.S.* 38:11–2. And under the military compensation law servicemen were barred from recovery if the injury was due to a voluntary act or willful neglect or "vicious habits." *L.*1937, *c.* 49, Art. XV, § 1. This prohibition is to be contrasted with article 2 of the Workers' Compensation Act, which states that an employee may not recover if his injury was intentionally self-inflicted or where intoxication was the natural and proximate cause of injury. *N.J.S.A.* 34:15–7.[4]

Moreover, there are other provisions in article 2 of the Workers' Compensation Act that are clearly inapplicable to the military situation. For example, determination of the amount of counsel fees under the Workers' Compensation Act is made by the judge of compensation. *N.J.S.A.* 34:15–26. This practice is not contemplated with respect to the military compensation procedure. See also *N.J.S.A.* 34:15–20 (settlement of disputes) and *N.J.S.A.* 34:15–17, –18 (notice), provisions that do not apply in the military compensation law context.

This is not to say that the Workers' Compensation Act may not serve as a guide in ascertaining the meaning of the military compensation law. *See Kurnath v. State,* 130 *N.J.L.* 87 (Sup. Ct.), aff'd o.b., 131 *N.J.L.* 161 (E. & A.1943). In *Doerr v. State,* 129 *N.J.Super.* 150, 154 (App.Div.1974), the Appellate Division, in determining how the phrase "in line of duty" was to be

---

[4]*N.J.S.A.* 34:15–7 has since been amended to preclude recovery where the "natural and proximate cause of injury" is an employee's unlawful use of a drug or his willful failure to use a personal protective device in certain circumstances or when recreational or social activities not a regular incident of employment are the proximate cause of injury. *L.*1979, *c.* 283, § 1.

interpreted, properly looked to the construction of similar language with respect to volunteer firemen who are entitled to workers' compensation when injured "in line of duty." *N.J. S.A.* 34:15–43. It may be noted that this particular provision is found in article 3, not article 2, of chapter 15 of the Workers' Compensation Act. In view of all the foregoing, we reject the proposition that all of article 2 of the Workers' Compensation Act was incorporated into the military compensation law.

### C.

■ The Attorney General also contends that the military compensation law is altogether inapplicable because plaintiff was injured while on federal duty, that he was in effect an employee of the federal government, and that any compensation to which he might be entitled should come from the federal government. The argument assumes that plaintiff's service with the National Guard was pursuant to 32 *U.S.C.* § 503 and that he was entitled to compensation only under 32 *U.S.C.* § 318. The Attorney General presented no factual basis for these contentions. Further, the National Guard's initial response to plaintiff's claim was a denial that any injury had occurred during the training period, not that plaintiff's sole remedy, if any, rested with the federal government. The New Jersey Department of Defense investigated and processed the matter.

The Department of Defense is a principal department of the executive branch of the State government. *N.J.S.A.* 38A:3–1. The organized militia, known as the New Jersey Army and Air National Guard, is the core of the Department. *See N.J.S.A.* 38A:3–2; *N.J.S.A.* 38A:1–1. The state military scheme is coordinated with federal law. The rank of officers and enlisted members is determined by the same method as prescribed by federal laws. *N.J.S.A.* 38A:4–2. When called to active duty under state law, the militia receive pay and allowances according to federal law and the funds are advanced by the federal

government. *N.J.S.A.* 38A:4–3. The Governor is commander-in-chief except when the guard is called into federal service. *N.J.S.A.* 38A:2–1.

The federal Constitution authorizes Congress to provide for calling forth, organizing, arming, and disciplining the militia, reserving to the States the appointment of officers and the authority for training. *U.S. Const.,* art. I, § 8, cls. 15–16. Pursuant to its authority Congress provided that the National Guard would be trained, uniformed, and equipped subject to federal standards. *See, e.g.,* 32 *U.S.C.* § 502. Further, the federal government could provide for National Guard participation in field exercises. *See* 32 *U.S.C.* § 503. "The National Guard occupies a unique position in the federal structure." *New Jersey Air Nat'l Guard v. Federal Labor Relations Auth.,* 677 *F.*2d 276, 278 (3d Cir.), *cert.* denied, 459 *U.S.* 988, 103 *S.Ct.* 343, 74 *L.Ed.*2d 384 (1982). Its role "does not fit neatly within the scope of either state or national concerns; historically the Guard has been, and today remains, something of a hybrid." *Id.* at 278–79.

A national guardsman is also entitled to "hospital benefits, pensions, and other compensation" provided for regular army personnel if "disabled in line of duty from injury while so employed." 32 *U.S.C.* § 318. It is well settled that national guardsmen engaged in training, though entitled to these benefits, remain employees of the State. *See Maryland v. United States,* 381 *U.S.* 41, 48, 85 *S.Ct.* 1293, 1298, 14 *L.Ed.*2d 205, 210 (1965). That being so, we know of no reason that the State's military compensation law is not applicable.

II

There remains for consideration the right of one soldier to maintain an action against a fellow soldier for injuries suffered in the line of duty. Actions between soldiers historically have been placed on a different footing than suits against the State. For example, in *Weaver v. Ward,* 80 *Eng.Rep.* 284 (1616), suit

was brought by one soldier against another for injuries stemming from a military exercise during which the rifle of the defendant soldier discharged. The court found that the defendant could be held responsible unless he "had committed no negligence to give occasion to the hurt." *Ibid.* The general principle that evolved is that soldiers may be liable in a civil suit to fellow soldiers for their negligent acts performed in the line of duty unless the act was in obedience to the lawful order of a superior officer. 54 *Am.Jur.*2d "Military, and Civil Defense" §§ 291, 294 (1971); *see Jaffee v. United States,* 663 *F.*2d 1226, 1257, 1257 n. 22 (3d Cir.1981) (Gibbons, J., dissenting), *cert.* denied, 456 *U.S.* 972, 102 *S.Ct.* 2234, 72 *L.Ed.*2d 845 (1982); *Mazurek v. Skaar,* 60 *Wis.*2d 420, 425, 210 *N.W.*2d 691, 694 (1973); *Curnutt v. Holk,* 230 *Cal.App.*2d 580, 41 *Cal.Rptr.* 174 (1964).

As a general proposition officers who, within the scope of their duty, direct soldiers are not liable to them for resultant injuries. *Bradley v. Arthur,* 107 *Eng.Rep.* 1068 (1825); *cf. Chappell v. Wallace,* 462 *U.S.* 296, 305, 103 *S.Ct.* 2362, 2368, 76 *L.Ed.*2d 586, 594 (1983) (enlisted military personnel may not maintain suit for damages against superior officer for constitutional violations). But that immunity may not be applicable when the officer acts without authority, *Nixon v. Reeves,* 65 *Minn.* 159, 67 *N.W.* 989 (1896), or with malice, *Crozman v. Callahan,* 136 *F.Supp.* 466 (W.D.Okla.1955).

Our Legislature in 1906 expressly provided that members of the militia were immune, "civilly or criminally, for any act or acts done while in the performance of their duties." *L.*1906, *c.* 233, § 13, p. 444. This provision was subsequently transformed into *N.J.S.A.* 38:4–9, which provided that members of the organized militia "shall not be liable civilly or criminally for any acts done by them while engaged in the performance of their duty." *N.J.S.A.* 38:4–10 supplemented this immunity by requiring the Attorney General to represent a soldier defendant in any such action at the expense of the State. The literal language of

these provisions indicates that they prevented suits by one national guardsman against another. Our research has disclosed no legislative history or case law to indicate a different intent.

The Tort Claims Act, however, repealed *N.J.S.A.* 38:4–9 and –10. *N.J.S.A.* 59:12–2. The bar that had previously existed was lifted. *L.*1972, *c.* 45, p. 159. By providing for the repeal of *N.J.S.A.* 38:4–9 and –10 within the Tort Claims Act, the Legislature permitted civil suits between members of the military on the same basis as suits between other public employees.[5] Since passage of the Tort Claims Act a national guardsman is ordinarily liable "for injury caused by his act or omission to the same extent as a private person," *N.J.S.A.* 59:3–1a, although discretionary acts, *N.J.S.A.* 59:3–2, or good faith acts in the execution or enforcement of any law, *N.J.S.A.* 59:3–3, do not give rise to a cause of action.

The Attorney General claims that the bar in the workers' compensation model preventing an employee from suing a fellow employee, *N.J.S.A.* 34:15–8, was incorporated into the military compensation law. That contention ignores the fact that, in 1937, when the military compensation law came into existence, actions against fellow employees were permitted under the Workers' Compensation Act. *Evans v. Rohrbach*, 35 *N.J.Super.* 260 (App.Div.), certif. denied, 19 *N.J.* 362 (1955); *Churchill v. Stephens*, 91 *N.J.L.* 195 (E. & A.1917). Not until 1961 was the Act amended so as to bar suits against a fellow employee. *L.*1961, *c.*2, § 1; *N.J.S.A.* 34:15–8.

The 1963 reenactment of the military compensation law did not incorporate the bar to suits by fellow employees. The 1963 reenactment made no substantive change in its reference to article 2 of the Workers' Compensation Act. The recodification

---

[5]An employee is defined to include an officer, employee or servant, whether or not compensated or part-time, who is authorized to perform any act or service. *N.J.S.A.* 59:1–3.

of that reference at *N.J.S.A.* 38A:13–1 refers only to "medical care" and "compensation" as "is provided in article 2 of chapter 15 of Title 34." As previously noted, the identification of these particular items of compensation is inconsistent with an intent to incorporate all provisions of article 2 into the military compensation law.

We hold that a member of the militia may sue a fellow guardsman in a civil action for injuries suffered in the line of duty, where those injuries are attributable to the fellow member's negligence, unless the defendant was complying with a lawful order.

It is somewhat anomalous that the fellow guardsman may be liable while the State is immune, because the Tort Claims Act also contemplates that a public entity will be liable for injury caused by a public employee within the scope of his employment in the same manner and to the same extent as a private individual. *N.J.S.A.* 59:2–2; *cf. Czyzewski v. Schwartz*, 110 *N.J.Super.* 255 (App.Div.1970) (holding State employee liable for negligent acts committed within scope of employment, though employer State not liable on basis of sovereign immunity). Moreover, chapter 10 of the Tort Claims Act provides that the State shall indemnify a State employee liable for a judgment based on an act or omission within the scope of his employment. *N.J.S.A.* 59:10–2. Excepted from this indemnification are cases of actual fraud, actual malice, or willful misconduct. *Ibid.* Thus, the injured party who is unable to prevail in a direct action against the State may accomplish that result indirectly. We are not asked to resolve that question in this case.[6] However, we invite the Legislature to consider the

---

[6]Attention is also directed to *N.J.S.A.* 59:1–7 of the New Jersey Tort Claims Act, which states that "[a]ny waiver of immunity and assumption of liability contained in this act shall not apply in circumstances where liability has been or is hereafter assumed by the United States, to the extent of such assumption of liability." This section was similar to section 8–a of the New York Court of Claims Act and was "intended to guarantee that by waiving immunity the State

seemingly anomalous and conflicting policies that have resulted from the retention of the military compensation law and the elimination of immunity for members of the military.

In this respect we note that FMC Corporation has filed a cross-claim against the State. However, since plaintiff cannot maintain a direct action against the State and there is no statutory provision affording FMC Corporation any indemnification from the State, FMC's cross-claim against the State must fail. *Cf. Stencel Aero Eng'g Co. v. United States,* 431 *U.S.* 666, 97 *S.Ct.* 2054, 52 *L.Ed.*2d 665 (1977) (United States not required under Federal Tort Claims Act to indemnify third party for damages paid to member of National Guard).

### III

#### A.

The statutory procedure in the military compensation law contemplates that the Chief of Staff of the Department of Defense must approve each claim. *N.J.S.A.* 38A:13-1. The Chief of Staff may require the soldier claimant to undergo medical examinations. *N.J.S.A.* 38A:13-3. Refusal to comply would result in a barring of "all right to any claim." *Id.* The Chief of Staff may appoint a board of officers to conduct an inquiry into the merits of the claim and to submit a report and findings, which are subject to the approval or disapproval of the Chief of Staff. *N.J.S.A.* 38A:13-4. A claim must be presented within two years from the date of the injury, disease, disability, or death. *N.J.S.A.* 38A:13-6.

This statutory procedure has been modified by a 1981 amendment to the Administrative Procedure Act (APA). The Depart-

---

of New Jersey is not relieving the Federal Government of a liability which it has assumed in the absence of such a waiver." *The Report of the Attorney General's Task Force on Sovereign Immunity,* Comment *N.J.S.A.* 59:1–7 (1972). We do not decide whether *N.J.S.A.* 59:1–7 is applicable to a situation in which indemnification is sought from the State.

ment of Defense, among certain other agencies, was originally excluded from the APA by virtue of the APA's definition of "agency." *L.*1968, *c.* 410, § 2; *N.J.S.A.* 52:14B–2(a). In the 1981 amendment, this exclusion of the Department of Defense was excised. *L.*1981, *c.* 27, § 10.

The Attorney General contended at oral argument that the 1981 amendment was declared unconstitutional in *General Assembly v. Byrne,* 90 *N.J.* 376 (1982). *Byrne,* however, disapproved only those provisions of the amendment authorizing the Legislature to veto every rule proposed by a state agency. *L.* 1981, *c.* 27, §§ 1–9. *Byrne* left intact the new definitional section of the APA.

The Attorney General is concerned lest the redefinition cause proceedings before other state agencies to fall within the concept of "contested" cases subject to hearings before an administrative law judge. We here decide only the situation with respect to the Department of Defense.

■ Under *N.J.S.A.* 52:14F–8, no administrative law judge shall hear a contested case in the absence of a specific request by the State Board of Parole, the Public Employment Relations Commission, the Division of Workers' Compensation, the Division of Tax Appeals,[7] or "any agency not within section 2(a) of *P.L.*1968, *c.* 410 (C. 52:14B–2(a))." When *N.J.S.A.* 52:14F–8 was enacted in 1978, the APA excluded from its definition of "agency" the Division of Workers' Compensation, the Department of Defense, the office of the Governor, and certain other agencies. *L.*1968, *c.* 410, § 2; *N.J.S.A.* 52:14B–2(a). Thus, between 1978 and 1981, the Department of Defense was not subject to the APA, but could request an administrative law judge to hear a contested matter. Since passage of the 1981 amendment the

---

[7]The Division of Tax Appeals has been supplanted by the New Jersey Tax Court. *Unemployed-Employed Council, Inc. v. Horn,* 85 *N.J.* 646, 651 n. 3 (1981). The definition of "contested cases" under the APA was amended to reflect this change. *N.J.S.A.* 52:14B–2(b).

Department is subject to the APA. We therefore hold that contested matters before the Department of Defense are subject to hearings before an administrative law judge in the absence of a determination by the Chief of Staff to hear the matter directly. *N.J.S.A.* 52:14F–8b; *see Unemployed-Employed Council, Inc. v. Horn*, 85 *N.J.* 646 (1981). The administrative law judge will of course submit his recommended findings and conclusions to the Chief of Staff.

### B.

As previously observed, defendants' motions were effectively a motion to strike the pleadings. Plaintiff seeks damages for personal injuries incurred in the line of duty against his fellow militiamen and his employer, the Department of Defense. His exclusive remedy against the Department of Defense is provided for in the military compensation law. The parties have advised us that plaintiff's claim is pending before the Department. We see no reason why that claim should not be processed. We note only that plaintiff claims the accident occurred in the line of duty, though the injury manifested itself at a later time. It is, of course, his burden to demonstrate that the injury was caused by the accident.

Plaintiff's civil liability action against Watson, the driver of the carrier, and Curiale, the officer in charge, may be maintained as well as FMC's cross-claim with respect to these two defendants. It may be that when the facts are developed Watson may have a defense because he was complying with a lawful order. *See Scheuer v. Rhodes*, 416 *U.S.* 232, 249–50, 94 *S.Ct.* 1683, 1692–93, 40 *L.Ed.*2d 90, 104 (1974).

It is advisable that the civil liability action should not be tried until the administrative proceeding against the Department of Defense is completed. If the action against the Department establishes that there was no causal relationship between the incident and the injury, plaintiff may be barred from proceeding against defendants in the civil action. We do not pass upon the

preclusion issue since it was not raised, briefed, or argued. If plaintiff is successful in his action against the Department, it is also clear, as plaintiff conceded on oral argument, that he is not entitled to recover twice for the same injuries. Furthermore, if plaintiff succeeds in his liability causes of action against his fellow national guardsmen, they may be entitled to indemnification from the State since the Attorney General is defending this suit. *See N.J.S.A.* 59:10–1.

The judgment of the Appellate Division is affirmed in part and reversed in part.

O'HERN, J., concurring in part and dissenting in part.

I disagree that the Legislature intends that a soldier in the New Jersey militia may maintain a cause of action in negligence against a fellow soldier for injuries suffered in the line of duty. The Court's holding is contrary to prevailing federal military law with which our military compensation is to be equated and contrary to the intent of our Legislature.

In *Feres v. United States,* 340 *U.S.* 135, 71 *S.Ct.* 153, 95 *L.Ed.* 152 (1950), the Supreme Court held that "the Government is not liable under the Federal Tort Claims Act for injuries to servicemen where the injuries arise out of or are in the course of activity incident to service." 340 *U.S.* at 146, 71 *S.Ct.* at 159, 95 *L.Ed.* at 161. By definition here we deal with a "line of duty" accident. The rationale of *Feres* was "best explained" by

> [t]he peculiar and special relationship of the soldier to his superiors, the effects of the maintenance of such suits on discipline, and the extreme results that might obtain if suits under the Tort Claims Act were allowed for negligent orders given or negligent acts committed in the course of military duty * * *. [*United States v. Brown,* 348 *U.S.* 110, 112, 75 *S.Ct.* 141, 143, 99 *L.Ed.* 139, 143 (1954).]

*Accord Stencel Aero Engineering Corp. v. United States,* 431 *U.S.* 666, 671–72, 97 *S.Ct.* 2054, 2057–58, 52 *L.Ed.*2d 665, 670 (1977). Thus, even though the Federal Tort Claims Act exposed the United States to liability "in the same manner and to the same extent as a private individual under like circumstances,"

28 *U.S.C.* § 2674, the *Feres* Court found the United States immune.

This rationale has been applied as well to bar suits between fellow members of the service, *Jaffee v. United States*, 663 *F.* 2d 1226 (3d Cir.1981), *cert.* den. 456 *U.S.* 972, 102 *S.Ct.* 2234, 72 *L.Ed.*2d 845 (1982), and to bar claims for indemnity by contractors such as FMC Corporation seeks to maintain here. *Stencel Aero Engineering Corp., supra*, 431 *U.S.* 666, 97 *S.Ct.* 2054, 52 *L.Ed.*2d 665.

> If claims for injuries sustained by members of the armed forces in the execution of military orders were subjected to the scrutiny of courts of justice, then the civil courts would be required to examine and pass upon the propriety of military decisions. The security and common defense of the country would quickly disintegrate under such meddling. [*Jaffee, supra*, 663 *F.*2d at 1232.]

We need not disagree with the part of Judge Gibbons' dissent in *Jaffee* concerning personal immunity for governmental officials "engaging in intentional misconduct," 663 *F.*2d at 1253, by exposing soldiers to the hazards of radiation through atomic bomb testing. That issue, " 'where authority is intentionally abused for the purpose of injustice or oppression,' " *id.* at 1268 (Gibbons, J., dissenting) (quoting *Dawkins v. Lord Paulet*, [1869] 5 *Q.B.* 94, 107–09), is not raised by the pleadings in this case. If it were, we would face it in the context of the limitation on the immunity when the fellow employee's act is intentional. *See N.J.S.A.* 34:15–8.

In addition to upholding military discipline, *Feres* relied on an evaluation of the probable intent of Congress in creating its military compensation scheme. The *Feres* Court concluded that Congress would not have intended a dual system of liability under the Veterans Benefit Act and the Tort Claims Act.

I agree with the trial court that our Legislature would have the same intent with respect to the provisions of our Military and Veterans Act. *N.J.S.A.* 38A:13–1. The majority would view the Legislature's incorporation of Chapter "15 of Title 34" as a wooden act petrified as of the original 1937 enactment without the current provision for immunity of the fellow-serv-

ant. *N.J.S.A.* 34:15–8. I believe that the Legislature intended an organic incorporation of the broader outlines of our Workers' Compensation Act except insofar as the acts conflict. *Cf. Doerr v. State,* 129 *N.J.Super.* 150 (App.Div.1974) (the Military Act construed in the same way as the Workers' Compensation Act). Moreover, aside from the uncertainty of the majority's viewpoint on probable legislative intent, there is the reality that the military compensation law of 1937, *L.*1937, *c.* 49, Art. XV, §§ 1–11, was substantially re-enacted in 1963 as the Military and Veterans Law. *L.*1963, *c.* 109. At that time the Workers' Compensation Act had already been amended to include the provision that barred suits against a fellow employee. *L.*1961, *c.* 2.

The majority's reliance upon the repealer in the Tort Claims Act, *N.J.S.A.* 59:12–2, of the militia's public immunity expressed under *N.J.S.A.* 38A:4–9 to establish the right of one member of the military to sue another is unpersuasive. I respectfully submit that amendment has nothing to do with inter-service torts. It must be remembered that *N.J.S.A.* 38A:4–9 was an expression of sovereign immunity. It provided that "[m]embers of the organized militia ordered into active service of the State by proper authority shall not be liable civilly or criminally for any acts done by them while engaged in the performance of their duty." *Id.*

The only significance of the repeal of *N.J.S.A.* 38A:4–9 is that under the New Jersey Tort Claims Act, if a member of the militia, while on duty, injures a member of the public, the member of the public may maintain a cause of action under the act. Related provisions in the Federal Tort Claims Act, 28 *U.S.C.* §§ 2671–2680, have never been construed to affect suits between servicemen. *See Feres, supra,* 340 *U.S.* at 145, 71 *S.Ct.* at 158, 95 *L.Ed.* at 160; *Stencel, supra,* 431 *U.S.* at 673, 97 *S.Ct.* at 2058, 52 *L.Ed.*2d at 671.

The majority recognizes that its result is "somewhat anomalous." *Ante* at 250. I prefer to believe that the Legislature

does not intend anomalous results or circuity of proceedings. Modern courts in such circumstances have undertaken "the reinterpretation and fresh application of relevant statutory law in order to avoid the inadvertent and unintended creation of a statutory anomaly or hiatus and to preserve for such legislation a sensible place in the contemporary scene." *Renz v. Penn Central Corp.*, 87 *N.J.* 437, 458 (1981).

The introductory statement to the 1963 revisions of *N.J.S.A.* 38A:1–1 to 38A:20–3 states that "the purpose of the act is to consolidate and *modernize the provisions of Title 38* and to bring the law into closer uniformity with Federal military law." (Emphasis added).

Giving a sensible place to the military compensation law in the modern setting leads me to harmonize that law with both our Workers' Compensation Act and federal precedent. I would affirm the judgment below insofar as it held the compensation remedy to be exclusive and would therefore bar the plaintiff's claim against fellow service members and the indemnity claims of FMC Corporation. I agree that the matter should be remanded to the Chief of Staff instead of being dismissed. *See Estelle v. Board of Educ. of Red Bank*, 14 *N.J.* 256 (1954) (Compensation Court should re-open case after adjudication at law that accident was work-related). The application of the Administrative Procedure Act was not raised below. The Attorney General has requested oral argument on his contention that the redefinition of "agency" in *L.*1981, *c.* 27 extends only to rulemaking, not decisionmaking. I would not pass upon that issue.

*For affirmance in part, reversal in part* —Chief Justice WILENTZ, and Justices CLIFFORD, SCHREIBER, HANDLER, POLLOCK and GARIBALDI–6.

*Concurring in part, dissenting in part*—Justice O'HERN–1.