198 N.J. Super. 161 (1985)
486 A.2d 904
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
JOSE ORTEGA, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued December 11, 1984.
Decided January 9, 1985.
*162 Before Judges MICHELS and PETRELLA.
Frank J. Sciro, Jr. argued the cause for appellant (Sciro & Marotta, attorneys; John W. Marotta, on the brief).
John C. Berndt, Assistant Prosecutor, argued the cause for respondent; Joseph A. Falcone, Passaic County Prosecutor, attorney).
The opinion of the court was delivered by PETRELLA, J.A.D.
This appeal involves the issue of whether a defense investigator's tape recording of a court ordered post-indictment lineup was discoverable and admissible at trial and whether use of that tape at trial denied defendant his constitutional right to effective assistance of counsel. Defendant was convicted of *163 murder and sentenced to 50 years in State Prison, with a mandatory minimum term of 20 years. The court recommended that defendant receive psychological therapy during his incarceration. Defendant was also assessed $2,500 in favor of the Violent Crimes Compensation Board.
The stabbing murder for which defendant was convicted took place in Paterson on March 26, 1982. An eyewitness to the murder who had seen the victim's assailants had not been able to find photographs of the individuals involved in various police photograph albums that he had looked through around the time of the murder. However, the witness did continue to assist in the investigation and drove around various areas of the city with the police looking for the assailants. It was not until about a year later that the witness was again asked by the police to look at various photograph albums maintained at the Paterson Police Department. The witness recognized defendant Ortega's photograph in the second album he viewed as the individual he saw on March 26, 1982. As a result of this identification the police arrested Ortega on March 30, 1983.
The description given of the perpetrator of the offense shortly after the event, as well as a montage photograph prepared as a result of the description given by the witness, depicted a participant in the crime as having long hair and a beard. The Passaic County prosecutor became aware in September 1983 that Ortega had cut his hair and shaved off the full beard he was wearing at the time of his arrest. The State thus sought a post-indictment lineup to minimize the likelihood of misidentification at trial. Because identification was in issue, the prosecutor obtained an order requiring defendant to appear in a post-indictment lineup before the State's key witness to the crime. In the court's order allowing the lineup defendant was afforded the opportunity to have his attorney (the public defender) and the attorney's investigator present. It was also ordered that there was to be no interrogation or voice sample taken of defendant at that time. Both defendant and the State were *164 given the right to have a photograph taken of the lineup array if they desired.
On October 20, 1983 the lineup was held at the Passaic County Prosecutor's Office. Present were attorneys for the State and defendant as well as Alan Bischoff, an investigator with the Public Defender's office who tape recorded instructions given to the victim prior to the lineup by a prosecutor's investigator. Bischoff tape recorded all comments made during the actual lineup during which the witness identified Ortega.
The State brought a pre-trial motion for discovery of the public defender's tape recording. That motion was granted and subsequently the prosecutor played that tape for the jury during the trial. In addition to the tape being used at trial, the prosecutor commented on it in his opening statement and in summation.
On this appeal defendant argues that he was denied his Sixth Amendment right to effective assistance of counsel by the judge's decision to grant the State discovery of the tape recording made by his defense investigator. He argues that because defendant did not intend to use the tape recording at the trial, the State should have been precluded from obtaining same in view of the requirement engrafted upon R. 3:13-3(b)(4) by State v. Williams, 80 N.J. 472, 482 (1979), that the State could only obtain such discovery where the defense intends to use the statement or memorandum at trial.[1]
Defendant is, of course, entitled to the effective assistance of counsel. Strickland v. Washington, ___ U.S. ___, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); Gideon v. Wainwright, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963); State v. Sugar, 84 N.J. *165 1 (1980). Such cases, however, do not preclude what happened here. There was nothing private with respect to what was tape recorded here. Nor should there have been even an expectation of privacy. What occurred was visible and audible to all those present. Indeed, this recording provided confirmation of significant facts. Exclusion of those facts would impinge upon the fact-finding function of the jury and its search for the truth. The jury was entitled to know what happened during the course of the lineup, including the existence and content of the tape recording.
This is not a situation where defense counsel or his investigators interviewed either a defendant or a witness in private in preparation for trial. The tape recording was made of a court-ordered post-indictment lineup in the presence of both attorneys[2] and their investigators as well as the eyewitness to the crime who was making the identification. There is neither any privilege implicated nor any sound basis to conclude that the State should not have available to it the memorialization of what occurred in the presence not only of all attorneys, but the witness. Such evidence, to the extent admissible under the rules of evidence, was admissible at trial. Any of the people who were present at the lineup could, subject to our rules of evidence, testify as to what occurred at that particular time. Such testimony might well include everything that was on the particular tape recording at issue here, including the investigator's comments which were not made in a private setting.
The issue would probably not even have arisen if the State, particularly with knowledge that defendant's investigator was tape recording the proceedings, had made its own tape recording. Moreover, subject to the potential applicability of other evidence rules, the material on the tape is obviously relevant and material and could serve to corroborate the testimony of *166 the State's witnesses regarding what occurred at the lineup. See Evid.R. 20.
Alternatively, even if we were to hold there had been error in allowing discovery of that tape recording under the circumstances here, such error need not in every case require a new trial, even if a constitutional principle is implicated. State v. Macon, 57 N.J. 325, 338 (1971). Our review of the record satisfies us that the eyewitness testimony presented by the State and the positive identification that he made at the post-indictment lineup, in the context of the trial as a whole, made any error harmless beyond a reasonable doubt. It was not clearly capable of producing an unjust result. R. 2:10-2; State v. Macon, supra.
Affirmed.
NOTES
[1] Neither party has questioned the inclusion of tape recordings in the term "written statements" in R. 3:13-3(b)(4). There was testimony about what transpired. We are inclined to the view that the tape recording should be considered within the ambit of the rule. Whether a tape recording or a video recording was involved, transcripts could be made therefrom. The recording was corroborative. See Evid.R. 20.
[2] The presence of the attorneys at the lineup had the potential for implicating the Rules of Professional Conduct. See RPC 3.7.