209 N.J. Super. 120 (1986)
506 A.2d 1291
DEPARTMENT OF CORRECTIONS, RESPONDENT,
v.
GLENN LEO MCNEIL, SR., APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued March 10, 1986.
Decided March 25, 1986.
*121 Before Judges MORTON I. GREENBERG, J.H. COLEMAN and HAVEY.
Lyle P. Hough, Jr. argued the cause for appellant.
Jeffrey A. Bartolino, Deputy Attorney General, argued the cause for respondent (W. Cary Edwards, Attorney General, attorney; James J. Ciancia, Assistant Attorney General, of counsel; Jeffrey A. Bartolino, on the brief).
The opinion of the court was delivered by MORTON I. GREENBERG, P.J.A.D.
This matter comes on before this court on appeal by appellant Glenn Leo McNeil, an inmate in State correctional custody, from administrative action of the Department of Corrections ("Department") punishing him for violation of disciplinary standards. *122 While appellant makes no contention in his brief that he did not violate the standards, he raises the legal argument that they were not adopted in conformity with the rule making procedures of the Administrative Procedure Act ("APA"), N.J.S.A. 52:14B-1 et seq., and thus the discipline could not be validly imposed.
In view of the limited nature of appellant's contentions we only briefly state the facts and procedural history of the case. In August 1985, appellant, who was confined at the Adult Diagnostic and Treatment Center, Avenel, as a result of a conviction and sentence on a plea of guilty to an aggravated sexual assault indictment, was involved in an alleged assault. Ultimately, for violation of disciplinary standards governing inmates, he received the administrative sanction of 15 days disciplinary detention, 90 days administrative detention and 180 days loss of commutation time. This appeal, filed September 30, 1985, followed. On October 3, 1985 we stayed the sanctions pending resolution of the appeal.
An understanding of the issues on this appeal requires that we set forth the background of legislative requirements for establishment of correctional institution disciplinary standards under the APA, a law adopted by L. 1968, c. 410, effective September 1, 1969. The APA defined "Administrative rule" and "rule" (L. 1968, c. 410, § 2) and established certain formal procedures for the adoption of rules. See L. 1968, c. 410, § 4. While the definition of administrative rule and rule was broad enough to include correctional institution disciplinary standards, the APA excepted agencies with the primary responsibility to manage or operate "penal or correctional institution[s]," as well as certain other agencies from its rule making requirements. Thus the former Department of Institutions and Agencies, the predecessor agency to the Department, was exempt from the APA with respect to adoption of disciplinary standards. See Avant v. Clifford, 67 N.J. 496, 554-557 (1975).
*123 In 1981 the Legislature amended and supplemented the APA with the Legislative Oversight Act, L. 1981, c. 27, effective March 8, 1981. The principal purpose of this act was to authorize the Legislature to veto by concurrent resolution most administrative rules adopted by state agencies. L. 1981, c. 27, §§ 1-4. In addition, the Legislative Oversight Act amended the definition of "State agency" in the APA to eliminate the exemption for certain state agencies, including those with the primary responsibility to manage or operate penal or correctional institutions. L. 1981, c. 27, § 10.
The Legislative Oversight Act was controversial. Indeed the executive branch refused to comply with its oversight provisions, thus leading to the litigation culminating in General Assembly of State of New Jersey v. Byrne, 90 N.J. 376 (1982), in which the Supreme Court declared them unconstitutional. However, subsequently the court in Phillips v. State, Dept. of Defense, 98 N.J. 235, 252 (1985), indicated that in General Assembly v. Byrne it had not disturbed the expansion in the oversight act of the definition of state agencies subject to the rule making requirements of the APA. Accordingly, after adoption of the Legislative Oversight Act agencies operating penal or correctional institutions have been subject, when adopting rules, to the APA. However no case specifically stated this conclusion until Zeltner v. N.J. Dept. of Corrections, 201 N.J. Super. 195, 200 (App.Div. 1985).
From this history it is clear that inasmuch as the parties are in agreement, and correctly so, that disciplinary standards are administrative rules as defined in the APA, any standards adopted or amended (see N.J.S.A. 52:14B-4) after March 8, 1981 should have been adopted or amended in accordance with rule making procedures of the APA. As it is undisputed that the Department has not followed APA procedures in adopting the standards now in effect and the standards have been amended since March 8, 1981, it follows that appellant has been disciplined under procedurally defective standards.
*124 This conclusion compels us to consider what relief, if any, should be given to appellant. He contends that the Department has acted in bad faith in failing to follow the procedural requirements of the APA. He also asserts that the Commissioner of Corrections, on February 20, 1985, sent a letter to the attorney for the inmates involved in Zeltner v. N.J. Dept. of Corrections, supra, 201 N.J. Super. at 195, indicating his knowledge of the APA rule making requirements but that the Department has still failed to follow APA procedures though it could have done so. Further, appellant points out that after filing this appeal he moved to remand the matter to the Chancery Division for a judge to take evidence and make findings of fact as to why the Department had not complied with the APA. We denied this motion but permitted appellant to contend on the appeal that the case should be remanded to develop this record. He contends that a remand would permit him to establish the Department's bad faith thus justifying the reversal of the sanctions against him.
On the other hand the attorney general asserts that before Phillips v. State, Dept. of Defense, supra, 98 N.J. at 235, decided January 21, 1985, it was not apparent the expanded definition of "State agency" in the APA adopted by the Legislative Oversight Act survived General Assembly v. Byrne, supra, 90 N.J. at 376. Further, he maintains that Phillips was limited to the Department of Defense and thus not until the decision in Zeltner v. N.J. Dept. of Corrections, supra, 201 N.J. Super. at 195, decided May 14, 1985, was it clear that the APA rule making requirements applied to the Department. He further sets forth that in response to Zeltner the Department is now in the process of adopting its disciplinary standards in accordance with APA procedures and has published them as proposed rules on January 6, 1986 at 18 N.J.R. 27. Thus the attorney general contends the Department has acted properly and he urges that we should leave the current standards in place pending adoption of the standards as rules under the APA.
*125 It is unnecessary to resolve the factual dispute between the parties as to when the Department should have recognized its obligation to follow the rule making procedures of the APA in the adoption of disciplinary standards. While we do not think that standards already in force were invalidated by the Legislative Oversight Act, it is clear that any amendments thereafter should have been adopted in conformity with APA procedures. It is further evident that at the very latest the Department should have recognized this when Phillips was decided. But regardless of the reason for the delay, the public interest requires that the disciplinary standards remain in force pending their adoption as rules under the APA. Overall invalidation of the standards would void literally tens of thousands of disciplinary proceedings, for as we pointed out in Zeltner, there were then about 36,000 prison discipline proceedings annually in the various institutions. 201 N.J. Super. at 199-200. Undoubtedly many of these proceedings resulted in the loss of commutation time or otherwise reflected on the suitability of numerous inmates for parole. Thus it is obvious that general retroactive invalidation of the disciplinary standards would trigger the early inappropriate release of large numbers of inmates.[1] Beyond doubt, regardless of any failings of the Department we should, if possible, avoid such a mischievous result.
It is, of course, well established that when the public interest requires, a court is not obliged to void immediately administrative rules not adopted in conformity with the APA. Thus in K.P. v. Albanese, 204 N.J. Super. 166 (App.Div. 1985) and N.J. Ass'n of Health Care Facil. v. Klein, 182 N.J. Super. 252 (App.Div. 1982), both actions in which the adoption of administrative rules was challenged on the procedural ground that the agency had not complied with the APA, we agreed the rules *126 had not been validly adopted but nevertheless allowed them to remain in force on a temporary basis. In each case we remanded the matter to the agency to comply with the APA. Here, however, the appeal is before us on a different procedural basis than in those cases. Appellant is not an association challenging rules for allowances under a public program as in N.J. Ass'n of Health Care Facil. v. Klein nor is he a class of patients challenging the adoption of regulations as in K.P. v. Albanese. Rather he is an inmate appealing from a disciplinary sanction imposed on him. Accordingly, his attack on the standards is incidental to the relief he seeks, invalidation of the discipline. Thus we are satisfied it would be inappropriate for us to remand the matter to the Department to follow the APA as that action would change the nature of the proceedings and expand this case beyond the boundaries drawn by the parties.
Yet we cannot ignore the illegality of the situation. We conclude it would be entirely proper to indicate a time beyond which the disciplinary standards cannot be enforced unless adopted in accordance with the APA, a result that would be nothing more than applying a decision prospectively, an ordinary judicial vehicle. See, e.g., Kelly v. Gwinnell, 96 N.J. 538, 551 (1984); Jersey Shore, Etc. v. Estate of Baum, 84 N.J. 137, 151-152 (1980); Pascucci v. Vagott, 71 N.J. 40, 50 (1976). As we have indicated, disciplinary rules have already been prepared and published. In the circumstances we hold that our decision invalidating the disciplinary standards shall be effective to all disciplinary infractions occurring after August 31, 1986. Thus if the standards are not adopted as rules in accordance with the APA by that date sanctions imposed for violation of the standards for infractions after that date may be invalidated.
The remaining issue is whether appellant himself should be granted relief. We recognize that a plaintiff bringing an action may be given the benefit of an otherwise prospective ruling "... for the practical reason that case law is not likely to keep up with the needs of society if the litigant who successfully *127 champions a cause is left only with that distinction." Willis v. Dept. of Cons. & Ec. Dev., 55 N.J. 534, 541 (1970). See also Kelly v. Gwinnell, supra, 96 N.J. at 551. Yet in some cases even the successful litigant is not given the benefit of a prospectively applied decision. See Jersey Shore, Etc. v. Estate of Baum, supra, 84 N.J. at 151-152. Here we are satisfied that regardless of this appeal the Department would have complied with the APA. We reach this conclusion as we do not doubt the representation of the attorney general that after the Zeltner decision, which antedated the appeal in this case, the Department began the process of complying with the APA. Thus we see no reason why appellant, who does not challenge the discipline imposed on him on the merits, should be given the benefit of this decision.[2]
The imposition of the disciplinary sanctions on appellant is affirmed and the stay of October 3, 1985 is vacated.
NOTES
[1] While we find it unnecessary to set forth in detail the legal consequence of the elimination of disciplinary proceedings from inmate records as bearing on loss of commutation time or fitness for parole they are obvious. See N.J.S.A. 30:4-123.51 to N.J.S.A. 30:4-123.54; N.J.S.A. 30:4-140; N.J. Parole Bd. v. Byrne, 93 N.J. 192, 205 (1983).
[2] Following oral argument appellant's attorney wrote the court and advised it that though he had stated at oral argument appellant did not contest his guilt, this comment was not entirely correct. While we fully understand his motives in sending this letter we disregard it as it was not authorized by any rule and we did not invite it. See R. 2:6-2(a); R. 2:6-4(a); R. 2:6-5; R. 2:6-11(d). In any event we consider the matter uncontested on the merits as appellant in his brief makes no challenge to the findings that he violated the standards.