224 N.J. Super. 7 (1988)
539 A.2d 736
THE HOME NEWS PUBLISHING CO., A NEW JERSEY CORPORATION, PLAINTIFF-APPELLANT,
v.
STATE OF NEW JERSEY, THE DEPARTMENT OF CORRECTIONS OF THE STATE OF NEW JERSEY, AND THE STATE PAROLE BOARD, DEPARTMENT OF CORRECTIONS, STATE OF NEW JERSEY, DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued February 22, 1988.
Decided March 9, 1988.
*9 Before Judges PETRELLA and DREIER.
Thomas J. Cafferty argued the cause for appellant (McGimpsey & Cafferty, attorneys; Thomas J. Cafferty, on the brief).
Michael E. Kahn, Deputy Attorney General, argued the cause for respondents (W. Cary Edwards, Attorney General of New Jersey, attorney; Michael R. Clancy, Deputy Attorney General, of counsel; Michael E. Kahn, on the brief).
The opinion of the court was delivered by DREIER, J.A.D.
Plaintiff Home News Publishing Company has appealed from a Law Division order denying the Newspaper access to certain classes of parole records. The newspaper requested defendant, New Jersey State Parole Board (Parole Board), to give plaintiff access to specified but wide-ranging Parole Board records concerning eight parolees. The following information was requested:
(1) The number of times and dates each individual was considered for parole.
(2) The dates of each denial of parole.
(3) A copy of the hearing determination.
(4) A copy of the case assessment.
(5) A copy of all reports presented during any such hearings.
(6) Whether these paroles were granted administratively or by Board Panel hearing.
(7) All records reflecting credits earned to reduce sentence including recording reflecting programs in which such credits were earned.
(8) A copy of the notification of release.
(9) Records reflecting current parole status.[1]
(10) Records reflecting correspondence between Parole Board and Bureau of Parole.
(11) Transcript, minutes or recordings of parole hearings.
The Attorney General's Office advised the Parole Board that it only had to supply plaintiff with three classes of records, (1), (2) *10 and (6), above. The Parole Board sent plaintiff the information approved by the Attorney General's Office.
On May 19, 1986 plaintiff filed a Law Division complaint. The Parole Board moved to dismiss the complaint or in the alternative to transfer the action to the Appellate Division.[2] The trial judge denied the Parole Board's motion. The Parole Board then moved for summary judgment asserting that the requested information is exempt from the Right to Know Law and that the interest in confidentiality outweighs plaintiff's common law right of inspection. The judge denied both this motion and a subsequent motion for reconsideration on the basis that the court had not reviewed the documents in controversy. The Parole Board submitted the documents for an in camera inspection, and the judge granted the summary judgment motion on May 26, 1987.
Because the judge's orders inadvertently were not forwarded to plaintiff, it assumed that the case had been transferred to the Appellate Division and therefore failed to file a notice of appeal. Leave to appeal nunc pro tunc was therefore granted on November 10, 1987.
On this appeal Home News contends that it is entitled to the requested parole information pursuant to the Right to Know Law, N.J.S.A. 47:1A-1 et seq., and the common law right of inspection, see Irval Realty v. Bd. of Pub. Util. Comm'rs, 61 N.J. 366, 372 (1972).

I
We note initially that the trial judge merely determined that inmates were deserving of a protected right of privacy. She did not examine the interplay between the Right to Know Law, the common-law right to inspect public records, the State's need *11 for confidentiality and the prisoner's right of privacy. Since this matter was initially appropriate for appellate review, we will treat the matter anew.
The Right to Know Law, N.J.S.A. 47:1A-1 et seq., provides that
all records which are required by law to be made, maintained or kept on file by any board, body, agency, department, commission or official of the State or ... by any public board, body, commission or authority created pursuant to law by the State . .. shall, for the purposes of this act, be deemed to be public records. [N.J.S.A. 47:1A-2].
The law also states that documents are exempted from disclosure if
provided in this act or by any other statute, resolution ... of the Legislature, executive order of the Governor, rule of court, any Federal Law, regulation or order, or by any regulation promulgated under the authority of any statute or executive order of the Governor. [N.J.S.A. 47:1A-2].
The Parole Board contends that Request 10 (correspondence between the Parole Board and the Bureau of Parole) and Request 11 (transcripts/recordings/minutes of parole hearings) are not public records. Plaintiff concedes that Request 11 is not a public record within the Right to Know Law, however, it asserts a right to access under the common law. The Parole Board correctly states that the requirement that documents "be made, maintained or kept on file," has been strictly construed. As noted in Collins v. Camden Cty. Health Dept., 200 N.J. Super. 281, 285 (Law Div. 1984), "[t]he courts have clearly stated that a written report must be specifically required by law to be made in order to be characterized as a public record subject to disclosure." See Nero v. Hyland, 76 N.J. 213, 220-221 (1978). Plaintiff has presented no law specifically requiring written reports between the Parole Board and the Bureau of Parole, nor does plaintiff advance any other argument in support of its contention that this correspondence is a public record.
*12 The remaining request categories[3] appear to describe public records within the definitions of N.J.S.A. 47:1A-2 and Collins, supra, 200 N.J. Super. at 285. The Parole Board argues, however, that the remaining requests need not be complied with because of exemptions provided by Parole Board regulations and the Department of Correction's regulations and standards.
Pursuant to N.J.S.A. 30:4-123.48(d), the Parole Board has promulgated a regulation regarding the confidentiality of Parole Board administrative operations and of written materials pertaining to inmates or parolees. N.J.A.C. 10A:71-2.1. Pursuant to N.J.S.A. 30:1B-10, the Department of Corrections also has promulgated N.J.A.C. 10A:31-3.5 and Standard 281.8, with which the Parole Board is statutorily obliged to comply. See N.J.S.A. 30:4-123.54(c) and N.J.S.A. 30:4-123.55(c).
DOC Standard 281 provides that certain categories of records may be inspected or released with the consent of the inmate/parolee subject to the deletion of confidential information which is defined in .8:
.8 Confidential Records: definition

The following types of records are designated confidential:
(a) Reports which are evaluative, diagnostic or prognostic in nature furnished with a legitimate expectation of confidentiality and which, if revealed to the inmate or others, could be detrimental to the inmate or could jeopardize the safety of individuals who signed the reports, or were parties to the decisions, conclusions or statements contained therein;
(b) Information the disclosure of which could have a substantial adverse impact on the security or orderly operation of the institution;
(c) Information or reports which would invade or jeopardize privacy rights of the inmate/parolee or others;

*13 (d) Disclosures which would jeopardize internal decision-making or policy determinations essential to the effective operation of any institution or the Department;
(e) Disciplinary and criminal investigative reports, including those from informants, disclosure of which would impede ongoing investigations, create a risk of reprisal or interfere with the security or orderly operation of the institution;
(f) Such other records as the Commissioner or Superintendents, based on their experience and exercise of judgment, believe must be kept confidential to insure maintenance of discipline and the orderly operation of the institution or Department.
The adoption or amendment of any administrative rules after March 8, 1981 must have been in compliance with the rulemaking procedures of the Administrative Procedure Act (APA), N.J.S.A. 52:14B-1 et seq. See Legislative Oversight Act, L. 1981, c. 27, effective March 8, 1981, discussed in Department of Corrections v. McNeil, 209 N.J. Super. 120, 123 (App.Div. 1986), certif. den. 104 N.J. 422 (1986). The Parole Board admits that DOC Standard 281 has not been so promulgated. Plaintiff, therefore, has been denied access to information partially in reliance on a procedurally defective standard.
Even though regulations are invalid for failing to comply with the notice, hearing and publication requirements of the APA, a court is not obliged to void these rules immediately when the public interest requires otherwise. McNeil, supra, 209 N.J. Super. at 125. In McNeil, the Appellate Division did not order general retroactive invalidation of prison disciplinary standards not adopted in conformity with the APA; an overall invalidation of standards would have voided "literally tens of thousands of disciplinary proceedings" and would have triggered "the early inappropriate release of large numbers of inmates." Ibid. Here, the Parole Board similarly argues that the invalidation of DOC 281.8 would not be in the best interest of the public because
individuals who have submitted reports, letters, memorandums and verbal information to the Parole Board have done so with the understanding that this information would be kept confidential. These individuals could be subject to physical retaliation if the information is released. Indeed, many other individuals not involved with this specific case could be in physical danger if Standard 281 is voided. Finally, the inmates' right to privacy would be infringed.
*14 This is a persuasive argument. See also Thompson v. New Jersey State Parole Bd., 210 N.J. Super. 107, 122 (App.Div. 1986).[4]
In the case before us, defendants argue that even if DOC Standard 281.8 were voided retroactively, the Parole Board's refusal to release most of the disputed documents might still validly be based on an additional Department of Corrections' regulation pertaining to the confidentiality of inmate records, N.J.A.C. 10A:31-3.5, or on the Parole Board's confidentiality standard, N.J.A.C. 10A:71-2.1. Chapter 31 regulations, however, are only applicable to county facilities. N.J.A.C. 10A:31-1.1. A third possible exemption to the Right to Know Law is provided by the Parole Board regulation, N.J.A.C. 10A:71-2.1, which states that its files, documents, records, and other materials pertaining to parole or the Parole Board administrative operations are confidential and that only persons authorized by the Parole Board may inspect any written materials pertaining to inmates or parolees. While the Parole Board has never argued the merits of this exemption, plaintiff contends that N.J.A.C. 10A:71-2.1 should not be construed as a regulation exempting otherwise public records. The Newspaper's reasoning is that the regulation declares all Parole Board files, documents and records to be confidential when the Right to Know Law requires that exceptions be specific categories of records: "To allow the wholesale exemption of records, as the State now urges N.J.A.C. 10A:71-2.1 does, is to allow the exception to swallow the whole." Although plaintiff does not cite any precedent, its assertion is supported by at least one case. In Irval Realty, supra, 61 N.J. at 374 the Supreme Court declared that based on legislative history and gubernatorial *15 press releases, the power to exclude records from the public domain was not intended to be unlimited. The Court firmly rested its conclusions on a press release by Governor Hughes where the governor cautioned "the officials granted authority under this order to exercise this authority sparingly and only to the extent required by the public interest." Ibid.[5]N.J.S.A. 47:1A-1, entitled "Legislative findings," indicates that exclusions can be made only when necessary for the protection of the public interest.[6] Standing alone, it is certainly less than clear that N.J.A.C. 10A:71-2.1 "define[s] a reasonable confidentiality exception no broader than the legitimate needs require." See Thompson, supra, 210 N.J. Super. at 124.
In sum, each "confidentiality" regulation presented by the Parole Board as support for its refusal to allow access has problems concerning the sustainability of the scope of its operation. The only regulation which on its face could unquestionably sustain this exemption is DOC Standard 281.8, and it is procedurally defective. Before we fashion a prospective order in this case, we must examine plaintiff's alternative claim of a common-law right to the requested documents.

*16 II
A citizen has a common-law right to inspect public documents if they are public records, if the citizen has the requisite interest to inspect the records, and if the interest in disclosure outweighs confidentiality. Irval Realty, supra, 61 N.J. at 372 and 375. The Parole Board concedes that a newspaper has standing to seek disclosure of public documents. See Red Bank Register v. Board of Educ., 206 N.J. Super. 1, 9 (App.Div. 1985). It also concedes that all of the items requested by Home News are public records except for Request 11 (transcripts, recordings or minutes of parole hearings).
A common-law public record is defined as
one required by law to be kept, or necessary to be kept in the discharge of a duty imposed by law, or directed by law to serve as a memorial and evidence of something written, said, or done, or a written memorial made by a public officer authorized to perform that function, or a writing filed in a public office. The elements essential to constitute a public record are ... that it be a written memorial, that it be made by a public officer, and that the officer be authorized by law to make it.... [Nero v. Hyland, supra, 76 N.J. at 222 (quoting Josefowicz v. Porter, 32 N.J. Super. 585, 591 (App.Div. 1954) (quoting 76 C.J.S., Records, § 1, p. 112))].
The Parole Board contends that Request 11 is not a public record "because transcripts/recordings are not written memorials made by public officers." Plaintiff's request, however, was for transcripts, minutes or recordings. Minutes are clearly a written memorial, and in Beck v. Bluestein, 194 N.J. Super. 247, 259-260 (App.Div. 1984), transcripts of proceedings before the Board of Medical Examiners were held to be "written memorials made by public officers in the exercise of public functions, which they are lawfully authorized to perform." Recordings also may meet the common-law public record requirements. See Evid.R. 1(13), defining "writing," and the possible expansion of this definition in State v. Colasurdo, 214 N.J. Super. 185, 191 (App.Div. 1986), and State v. Ortega, 198 N.J. Super. 161, 164 n. 1 (App.Div. 1985); cf. Fed.Evid.R. 1001(1) which defines "writings and recordings."
*17 Once it is determined that the documents requested are public records and that the plaintiff has the requisite interest in examining the documents, the judge must balance the public's interest in maintaining the confidentiality in the documents against plaintiff's right to the information to determine whether plaintiff should have access to the records. Beck v. Bluestein, supra, 194 N.J. Super. at 260; Nero v. Hyland, supra, 76 N.J. at 223-224. The balancing process has been described as being "concretely focused upon the relative interests of the parties in relation to these specific materials." McClain v. College Hosp., 99 N.J. 346, 361 (1985), quoted in Loigman v. Kimmelman, 102 N.J. 98, 103 (1986). There is no fixed rule for determining whether disclosure is appropriate, and the process is flexible and sensitive:
As the considerations justifying confidentiality become less relevant, a party asserting a need for the materials will have a lesser burden in showing justification. If the reasons for maintaining confidentiality do not apply at all in a given situation, or apply only to an insignificant degree, the party seeking disclosure should not be required to demonstrate a compelling need. [99 N.J. at 362, quoted in Loigman, supra, 102 N.J. at 103].
In Loigman v. Kimmelman, supra, the Court has dealt with the sensitive issue of the appropriate method to demonstrate a need for confidentiality. The Attorney General refused to turn over an audit of the county prosecutor's confidential account to an interested attorney. In reversing the trial court's grant of the State's motion to dismiss on the ground that the plaintiff did not have a common-law right of access, the Appellate Division remanded the matter for
a review in camera to ascertain whether all or some portion of the audits should remain confidential as urged by the attorney general or whether all or some part should be made available to plaintiff for his inspection. [Id. at 102].
The Attorney General and the County Prosecutors' Association obviously objected to even an automatic in camera requirement. The Supreme Court modified the opinion stating that
although the Appellate Division referred to a determination of standing before an in camera review would be called for, implicit in the concept is a judicial weighing of that showing of standing against the need for confidentiality *18 before proceeding to an automatic in camera review of the materials. [Id. at 106].
This pre-in camera balancing procedure is to protect the government's legitimate interests in confidentiality. Id. at 108. The government is required "to preliminarily classify, describe, and, in some cases, index the materials." Id. at 109. The index, however, may suggest some public misconduct which would require the court to make an in camera review of all the materials before making a final decision. Id. at 113. Note that this process of evaluating documents is to determine the extent of the government's need for confidentiality.
The Parole Board argues that to protect the prisoners' privacy rights none of the materials enumerated in the outstanding requests should be disclosed. The Parole Board further contends that to protect confidential sources, any information submitted to the Board, which is kept from the inmate because of its confidential nature and classified as such by DOC or Board standards, should not be disclosed. Furthermore, correspondence between the Parole Board and the Bureau of Parole (Request 10) is confidential according to the Parole Board to further "the free and candid exchange of ideas and opinions between and within government agencies." Loigman, supra, 102 N.J. at 106. In short, the Parole Board is arguing that between the protection of sources and the protection of the inmates' privacy, the information that was not turned over to the Newspaper should be absolutely protected.
To evaluate these allegations of exemptions, however, a court must examine the documents either in camera or in the preliminary "indexing" format suggested by Loigman in situations where even an in camera review could seriously jeopardize the government's interests in confidentiality. Id. at 108.[7] *19 When the court views the materials in camera, "it will thereafter make a final determination as to whether, by further excision or deletion of privileged and confidential materials, it can appropriately order the materials released." Id. at 113. Some of the considerations include:
(1) the extent to which disclosure will impede agency functions by discouraging citizens from providing information to the government; (2) the effect disclosure may have upon persons who have given such information, and whether they did so in reliance that their identities would not be disclosed; (3) the extent to which agency self-evaluation, program improvement, or other decisionmaking will be chilled by disclosure; (4) the degree to which the information sought includes factual data as opposed to evaluative reports of policymakers; (5) whether any findings of public misconduct have been insufficiently corrected by remedial measures instituted by the investigative agency; and (6) whether any agency disciplinary or investigatory proceedings have arisen that may circumscribe the individual's asserted need for the materials. [Ibid.]
The trial court properly requested the Parole Board to submit the documents for an in camera inspection, however, the Parole Board admits that the judge did not review the documents prior to her decision. We have reviewed the documents, and see a mix of potentially sensitive and completely innocuous material. This demonstrates the need to revise and repromulgate DOC Standard 281.8 under the Administrative Procedure Act. Certain information prejudices neither the State nor inmates. No chilling effect upon informants' statements or frank psychiatric evaluations will be created by disclosing certain data requested by plaintiff. For example, if any reference to the inmate's private life or other confidential material was deleted from the parole hearing determination (Request 3), the parole process would not be hampered. A bare listing of the inmates' credits and the programs in which they were earned (Request 7) and the release notification (Request 8), suitably sanitized to delete personal references as might be reflected in parole conditions, also do not appear to thwart any principles of confidentiality or aims of the parole system. Other information may also be supplied after the administrators view this request in an expansive manner. If limitations are *20 justified, an impartial arbiter can impose them.[8]
In the case before us we will adopt the same procedure as in McNeil and not merely drop the barriers to full disclosure pending proper adoption of a new DOC Standard 281.8. The regulation should be drafted consistent with the principles herein noted, but with our appreciation that the administrative professionals understand the constraints of their system better than we do. We do not by our discussion mean to limit the administrative rule-making discretion when it is properly exercised. In the interim, for a period of six months during which the new regulation may be drafted and promulgated, the Parole Board shall review any requested documents on a case-by-case basis, disclosing only such non-confidential information as it deems consistent with the dual standards of protection and openness discussed in this opinion. Since the matter is properly before us as a review of State administrative action, any dispute shall be adjudicated in the first instance by the Office of Administrative Law, with redaction decisions as in Loigman recommended by an administrative law judge.
This matter is remanded to the Parole Board to pass anew on plaintiff's application for the requested information. The matter of DOC Standard 281.8 is remanded to the Department of Corrections for review, revision and proper promulgation of a regulation within the next six months.[9]
NOTES
[1] In its complaint the Newspaper withdrew its request for documents pertaining to current parole status.
[2] We note that the proper forum in which to challenge State administrative action is the Appellate Division. R. 2:2-3(a)(2).
[3] Request 3, a copy of the hearing determination, N.J.A.C. 10A:71-3.18(c); Request 4, a copy of the case assessment, N.J.S.A. 30:4-123.55(a) and N.J.A.C. 10A:71-3.15(b); Request 5, a copy of all reports presented during any such hearing, N.J.S.A. 30:4-123.54 and N.J.A.C. 10A:71-3.7(d)-(f); Request 7, records reflecting credits earned, N.J.A.C. 10A:71-3.7(e); Request 8, a copy of the notification of release, N.J.A.C. 10A:71-3.18(c). Requests 1, 2, and 6 were received by plaintiff and Request 9 was withdrawn by plaintiff.
[4] In McNeil, we concluded that the correct result was "to indicate a time beyond which the disciplinary standards cannot be enforced unless adopted in accordance with the APA, a result that would be nothing more than applying a decision prospectively, an ordinary judicial vehicle." 209 N.J. Super. at 126.
[5] In Irval Realty, supra, the Board of Public Utilities refused to allow access to the requested records on the basis of a regulation which categorically denied access to all records which "are required to be made, maintained or kept by and for the Board...." 61 N.J. at 371. Although the Court recognized that the regulation's possible over-inclusivity presented a problem, the Court did not confront the issue because the requested documents qualified as public records within the scope of the common-law rule, so the court instead pursued the common-law balancing test approach. Id. at 374-375.
[6] Interestingly, in Thompson v. New Jersey State Parole Bd., supra, 210 N.J. Super. at 124, we stated that N.J.A.C. 10A:71-2.1c and DOC Standard 281.8, "considered together, create and define a reasonable confidentiality exception no broader than the legitimate needs require." The Thompson case is distinguishable, however, because it dealt with a prisoner who was contesting the fact that part of his parole file had not been disclosed to him. Furthermore, we there noted that the impact of the Legislative Oversight Act on DOC Standard 281 was not raised on appeal. Id. at 119 n. 1.
[7] In this particular case the Parole Board submitted all of the requested documents for an in camera review to the trial court and has also submitted them to the Appellate Division. The Loigman indexing procedure, therefore, is unnecessary.
[8] We do not mean to require any witness statement or third party report by a physician, psychologist or the like to be disclosed. The obvious potential for a chilling effect on informants or evaluative personnel dictates protection in these areas. But where newspapers, as the public's representatives, seek sufficient information to verify that statutorily mandated procedures have been followed, they should be able to secure sufficient data to fulfill their role.
[9] We have been informed by a post-argument letter from the State that it plans to comply with the Administrative Procedure Act and publish a new DOC Standard 281 as a regulation by the end of July 1988.