997 A.2d 235 (2010)
413 N.J. Super. 544
Charles S. SLAUGHTER, a/k/a Umar M. Ali Khan, Appellant,
v.
GOVERNMENT RECORDS COUNCIL and Catherine Starghill, Esq., Respondents.
DOCKET NO. A-0163-08T1.
Superior Court of New Jersey, Appellate Division.
Submitted March 23, 2010.
Decided June 4, 2010.
*236 Charles S. Slaughter, appellant pro se.
Trenk, DiPasquale, Webster, Della Fera & Sodono, West Orange, for respondents (Kelley J. Lake, of counsel and on the brief; Gina R. Orosz, on the brief).
Paula T. Dow, Attorney General, for amicus curiae Attorney General (Nancy Kaplen, Assistant Attorney General, of counsel; Lewis A. Scheindlin, Assistant Attorney General, on the brief).
Before Judges SKILLMAN, FUENTES and GILROY.
The opinion of the court was delivered by
SKILLMAN, P.J.A.D.
One day after the July 7, 2002 effective date of the Open Public Records Act (OPRA), N.J.S.A. 47:1A-1 to -13, Governor McGreevey issued an executive order, which provided that any government record a state agency proposed to exempt from disclosure by administrative rule published after enactment of OPRA that had not yet been adopted in accordance with the Administrative Procedure Act (APA), N.J.S.A. 52:14B-1 to -25, would be exempt from disclosure. The issue presented by this appeal is whether that exemption remains in effect. We conclude that the part of the executive order establishing this exemption from disclosure under OPRA was intended to be temporary only, pending state agencies' determinations of whether to adopt their proposed rules providing for exemptions from OPRA, and therefore the exemption provided by the executive order is no longer in effect.
Appellant was convicted of a criminal offense in January 2004. Although the *237 record before us does not indicate what offense appellant was found to have committed or whether he is still incarcerated, appellant's brief states that evidence of a blood test analysis conducted by a "State Forensic Scientist" was introduced into evidence at his trial. Appellant asserts that this test was not properly performed and that an examination of documents relating to the "New Jersey State Police Forensic Science Laboratory's policies and procedures on blood test analysis for testing swabs and smears for blood, DNA comparisons, semen and saliva, specifically records concerning presumptive and confirmative testing" could be useful in exonerating him.
Appellant attempted to obtain a copy of this document by submitting a request for its production under OPRA to the Department of Law and Public Safety's custodian of records. The Department denied this request. Appellant filed a complaint with the respondent Government Records Council challenging this denial. The Department certified in its response that "there is one ... document ... responsive to [appellant's] request: the New Jersey Forensic Science Laboratory's Biochemistry Analysis Manual[,] ... [which] represents the standard operating procedure for laboratory analysis of, among other things, DNA analysis of biological evidence as well as presumptive and confirmative testing."
The Council's Executive Director, respondent Catherine Starghill, recommended that the Council find that the document requested by appellant is exempt from disclosure under a rule proposed by the Department of Law and Public Safety in 2002, which would exempt "Standard Operating Procedures" from disclosure under OPRA, and two executive orders issued by Governor McGreevey in 2002, which directed state agencies to handle requests for disclosure of government records under OPRA in accordance with administrative rules that had been proposed but not yet adopted. The Council accepted its Executive Director's recommendation and upheld the Department's denial of access to the document. Appellant appeals this administrative decision.
The appeal was originally calendared before a panel of this court last summer. However, that panel concluded that the appeal should not be heard without the participation of the Attorney General because it involved a question that could significantly impact upon consideration of OPRA requests by not only the Department of Law and Public Safety, of which the Attorney General is the department head, N.J.S.A. 52:17B-2, but also other state agencies. Accordingly, we entered an order on August 14, 2009, requesting the filing of an amicus curiae brief by the Attorney General. That brief was filed, and the parties submitted supplemental briefs responding to the Attorney General's submission.
OPRA was enacted on January 8, 2002, with an effective date of July 7, 2002. L. 2001, c. 404, § 18. In anticipation of OPRA going into effect, a number of State agencies published rule proposals in the New Jersey Register on July 1, 2002, which identified certain government records that would be exempt from disclosure under OPRA. See, e.g., 34 N.J.R. 2267(a) (July 1, 2002) (Department of Law & Public Safety); 34 N.J.R. 2175(a) (July 1, 2002) (Department of Community Affairs); 34 N.J.R. 2169(a) (July 1, 2002) (Department of Agriculture).
On July 8, 2002, the day after OPRA went into effect, Governor McGreevey issued Executive Order 21 for the purpose of implementing this new legislation. Executive Order 21 exempted certain specific categories of government records from disclosure under OPRA, such as documents *238 whose disclosure would substantially interfere with the State's ability to protect against acts of terrorism. In addition, Executive Order 21 included an omnibus provision that exempted any government record a State agency had proposed to exempt from disclosure by a rule that had been published for public comment but could not be adopted in accordance with the APA prior to the effective date of OPRA. This provision, which was paragraph 4 of Executive Order 21, stated:
In light of the fact that State departments and agencies have proposed rules exempting certain government records from public disclosure, and these regulations have been published for public comment, but cannot be adopted prior to the effective date of the Open Public Records Act, State agencies are hereby directed to handle all government records requests in a manner consistent with the rules as they have been proposed and published, and the records exempted from disclosure by those proposed rules are exempt from disclosure by this Order. Once those regulations have been adopted, they shall govern all government records requests filed thereafter.
One of the proposed rules covered by paragraph 4 of Executive Order 21 was proposed N.J.A.C. 13:1E-3.2(a)(2), which would exempt any "Standard Operating Procedures" of the Department of Law and Public Safety from disclosure under OPRA. The Department published this proposed rule in the Register on July 1, 2002, 34 N.J.R. at 2270, but for reasons that are not disclosed by the record before us, the Department never adopted this rule.
A little more than a month after issuing Executive Order 21, Governor McGreevey issued a second Executive Order dealing with exemptions from disclosure under OPRA on August 13, 2002, Executive Order 26. This executive order modified certain of the specific exemptions from disclosure provided under Executive Order 21. Executive Order 26 also established exemptions from disclosure of a number of additional specific types of government records that had not been exempted by Executive Order 21. However, the "Standard Operating Procedures" of the Department of Law and Public Safety, which would have been exempted from disclosure by the proposed N.J.A.C. 13:1E-3.2(a)(2), were not included in this expanded list of specific exemptions.
In addition to these modifications and additions to the exemptions from disclosure of specific categories of governmental records, Executive Order 26 included a general provision, paragraph 6, which stated:
The remaining provisions of Executive Order No. 21 are hereby continued to the extent that they are not inconsistent with this Executive Order.
The Council and Attorney General contend that the "provisions of Executive Order No. 21" that are "continued" by paragraph 6 of Executive Order 26 include paragraph 4 of Executive Order 21, which directed State agencies to apply rules for exemption from disclosure that had been proposed and published but not yet adopted when OPRA became effective in responding to requests under OPRA for disclosure of government records. We agree with this contention. However, it does not provide an answer to the question presented by this appeal, which is whether the exemption from disclosure provided by paragraph 4 of Executive Order 21 remains in effect nearly eight years after enactment of OPRA and the issuance of Executive Orders 21 and 26.
*239 It is clear that an exemption from a right of public access to a government record can be established not only by administrative rule but also by "Executive Order of the Governor." N.J.S.A. 47:1A-9(a); see Mason v. City of Hoboken, 196 N.J. 51, 65, 951 A.2d 1017 (2008). Therefore, the Governor could have exempted the Department of Law and Public Safety's "Standard Operating Procedures" from disclosure under OPRA by executive order. See Michelson v. Wyatt, 379 N.J.Super. 611, 619-20, 880 A.2d 458 (App. Div.2005). The only question is whether paragraph 4 of Executive Order 21, which was continued in effect by paragraph 6 of Executive Order 26, created such an exemption beyond the interim period required for the Department to determine whether to adopt proposed N.J.A.C. 13:1E-3.2(a)(2).
The sections of the preamble to Executive Order 21 relevant to paragraph 4 clearly indicate that the intent of this provision was solely to preserve, on a temporary basis, the confidentiality of government records that State agencies proposed to exempt from disclosure under OPRA by administrative rules that had been published but not yet finally adopted in conformity with the requirements of the APA:
WHEREAS, the Open Public Records Act takes effect on July 7, 2002, the 180th day after its enactment and
WHEREAS, the enactment of the Open Public Records Act occurred one week before this Administration took office; and
WHEREAS, it was necessary for all State agencies to conduct a comprehensive review of all records maintained by that agency, and a thoughtful analysis of those records to determine which of those records should be exempted from disclosure in order to protect the public interest or a citizen's reasonable expectation of privacy; and
WHEREAS, that review and analysis was required to be performed during a time of shifting personnel and priorities and changing the way government does business with its citizens; and
WHEREAS, that process has been largely completed and the various agencies have identified those documents that should be exempted from public disclosure in order to protect the public interest or a citizen's reasonable expectation of privacy; and
WHEREAS, the proposed regulations of the various agencies specifying which records under their jurisdiction are not to be subject to public examination have been published in the New Jersey Register on July 1, 2002; and
WHEREAS, due to the provisions of the Administrative Procedures Act and the implementing regulations adopted pursuant to that Act, the agencies' proposed rules will not be finalized until October 1, 2002 at the earliest[.]
The conclusion that paragraph 4 was only intended to establish a stopgap exemption from disclosure during the interim period between the effective date of OPRA and the adoption by State agencies of proposed rules that would establish such exemptions for the full period of time allowed under the APA is confirmed by the language of paragraph 4. The introductory clause of this paragraph expressly states that the reason for establishment by executive order of this general exemption from disclosure under OPRA was the inability of State agencies to adopt proposed rules establishing exemptions in accordance with the APA before OPRA's effective date:

In light of the fact that State departments and agencies have proposed rules exempting certain government records *240 from public disclosure, and these regulations have been published for public comment, but cannot be adopted prior to the effective date of the Open Public Records Act, State agencies are hereby directed to handle all government records requests in a manner consistent with the rules as they have been proposed and published....
[Emphasis added.]
The second sentence of paragraph 4 reinforces the conclusion that it was only intended to create an interim exemption that would expire when a State agency adopted an exemption from OPRA disclosure by administrative rule, stating: "Once those regulations have been adopted, they shall govern all government records requests filed thereafter."
A review of the specific exemptions from disclosure established by the other paragraphs of Executive Orders 21 and 26 provides additional support for the conclusion that paragraph 4 was not intended to establish permanent exemptions from disclosure under OPRA. Those specific exemptions, with one exception, apply only to the Governor's Office itself, which is not subject to the procedures contained in the APA for adoption of a rule or regulation, N.J.S.A. 52:14B-2(a), or to every "public agency," which includes not only all State agencies but also independent authorities and political subdivisions such as counties and municipalities. See N.J.S.A. 47:1A-1. The only other exemption from disclosure provided by Executive Order 26 is for "[r]ecords of complaints and investigations undertaken pursuant to the Model Procedures for Internal Complaints Alleging Discrimination, Harassment or Hostile Environments in accordance with the State Policy Prohibiting Discrimination, Harassment and Hostile Environments in the Workplace adopted by Executive Order No. 106 (Whitman 1999)," which does not apply to political subdivisions but applies to every State agency. Thus, none of the specific exemptions from disclosure set forth in Executive Orders 21 and 26 apply solely to an individual State agency, and for this reason those exemptions could not have been adopted as a rule or regulation in accordance with the APA. Therefore, the distinction between those specific exemptions and the general exemption provided by paragraph 4 for government records proposed to be exempted from disclosure by a proposed rule of an individual State agency provides additional support for the conclusion that paragraph 4 was only intended to establish an interim exemption from disclosure while State agencies decided whether to adopt those proposed rules.
We also note that if the Department of Law and Public Safety had adopted proposed N.J.A.C. 13:1E-3.2(a)(2), this rule would have expired five years after its effective date, N.J.S.A. 52:14B-5.1(b), unless renewed in accordance with N.J.S.A. 52:14B-5.1(c) or (d). Therefore, if we accepted the Attorney General's argument that, as a result of paragraph 4 of Executive Order 21, proposed N.J.A.C. 13:1E-3.2(a)(2) is now in effect even though it was never adopted in accordance with the APA, this rule not only would have become effective without the opportunity for public comment provided by the APA, see N.J.S.A. 52:14B-4, but also would be exempt from the APA's sunset provision, N.J.S.A. 52:14B-5.1, which is designed to assure that there is a periodic review of the continuing need for any administrative rule. See 37 New Jersey Practice, Administrative Law and Practice § 2.24 (Lefelt, et al.) (2nd ed. 2000 & Supp. 2009). For the reasons previously set forth, we perceive no basis for this kind of expansive interpretation of Executive Orders 21 and 26.
*241 We reject the Attorney General's argument that even though proposed N.J.A.C. 13:1E-3.2(a)(2) was never adopted in accordance with the APA and was not included in the lists of specific exemptions from disclosure under OPRA set forth in Executive Orders 21 and 26, it nevertheless became effective as a result of its inclusion on the State of New Jersey website, which lists all records exempted from OPRA disclosure by Executive Order. See Government Records Council, Executive Orders' Exemptions from Disclosure, ttp://www.nj.gov/grc/public/eoexempt/ (last visited May 20, 2010); OPRA, EO # 26 Summary of State Agency Rule Changes, http://www.nj.gov/opra/ eo26_rule_final.html (last visited May 20, 2010). Executive Orders 21 and 26 do not refer to this website. Therefore, there is no foundation for arguing that the exemptions listed on this website became effective as a result of their incorporation by reference in an executive order.
Moreover, even though Governor McGreevey referred to this website in a press release issued around the same time as Executive Order 26, the press release reflected Governor McGreevey's expectation that the exemptions from disclosure under OPRA listed on the website would be adopted in accordance with the APA:
The full list of [the reduced number of exemptions from disclosure under OPRA] is available on the web, ... and citizens will be invited to comment on these changes.
This is how our process is designed to work. When government proposes regulations through the Administrative Procedures Act, those proposals are open to comment from the public. Where changes are appropriate, changes are made.[1]
Moreover, consistent with this statement in the press release, paragraph 6 of Executive Order 26 "continued" the provisions of paragraph 4 of Executive Order 21, which also reflected the Governor's expectation that the proposed rules providing for exemptions from OPRA disclosure would be "adopted" in accordance with the APA and would "govern all government records requests filed thereafter." Consequently, N.J.A.C. 13:1E-3.2(a)(2) did not become effective, without its adoption in accordance with the APA, simply by its inclusion, in modified form, on the State of New Jersey website.
The record does not indicate why the Department of Law and Public Safety failed to adopt proposed N.J.A.C. 13:1E-3.2(a)(2) in accordance with the APA in the fall of 2002. The Department may have assumed, as the Attorney General argues in her amicus brief, that the rule proposal became effective as a result of issuance of paragraph 4 of Executive Order 21, which was continued in effect by paragraph 6 of Executive Order 26. However, it is also possible that the Department determined that this proposed OPRA exemption was unnecessary or that the proposal just fell between the cracks. But whatever the Department's reason for failing to adopt proposed N.J.A.C. 13:1E-3.2(a)(2), we conclude that even though the Department could have properly relied upon this proposed rule to deny disclosure of its Standard *242 Operating Procedures for the interim period envisioned by Executive Orders 21 and 26, that interim period has long since expired, and therefore, those executive orders no longer authorize the Department to deny access to its Standard Operating Procedures.
Nevertheless, we are reluctant to require immediate disclosure of those procedures, without affording the Department an opportunity to consider whether to now adopt the exemption that would have been provided by N.J.A.C. 13:1E-3.2(a)(2). We note that a Law Division judge issued an unpublished decision in 2005, which seemed to indicate that paragraph 4 of Executive Order 21 provided continuing authority to State agencies to deny access to government records they had proposed to exempt from disclosure by administrative rule published before issuance of Executive Order 21 but never adopted. In addition, the Council expressly held in a decision issued in 2006 that Executive Order 21 exempted from disclosure documents covered by another subsection of proposed N.J.A.C. 13:1E-3.2(a). The Department may have concluded, based on these decisions, that it could rely upon N.J.A.C. 13:1E-3.2(a)(2) to deny access to government records without adoption of this proposed exemption in accordance with the APA. Therefore, we conclude that the Department should be afforded an opportunity to do what it should have done in 2002decide whether the exemption from disclosure of its Standard Operating Procedures is required in the public interest, and if so, adopt the exemption, in either its original or modified form, see supra, note 1, in accordance with the APA. See Home News Publ'g Co. v. State, 224 N.J.Super. 7, 13-14, 20, 539 A.2d 736 (App.Div.1988).
Accordingly, we reverse the Council's final decision denying appellant's application for the disclosure under OPRA of the "New Jersey State Police Forensic Science Laboratory's policies and procedures on blood test analysis for testing swabs and smears for blood, DNA comparisons, semen, and saliva, specifically records concerning presumptive and confirmative testing," but delay the effectiveness of this decision until November 5, 2010. In the interim, the Department may withhold disclosure of the document.
NOTES
[1] Significantly, the State's website contains a modified version of proposed N.J.A.C. 13:1E-3.2(a)(2). Although proposed N.J.A.C. 13:1E-3.2(a)(2) would have exempted all "Standard Operating Procedures and training materials" of the Department of Law and Public Safety from disclosure under OPRA, the modified version set forth on the website only exempts "Standard Operating Procedures and training materials that would reveal agency investigative, enforcement or litigation procedures or techniques." EO 26 Summary of State Agency Rule Changes, supra (emphasis added).