

2007 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

5-22-2007

# Matreale v. NJ Dept Military

Precedential or Non-Precedential: Precedential

Docket No. 06-2051

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2007

Recommended Citation

"Matreale v. NJ Dept Military" (2007). *2007 Decisions.* Paper 1026.
http://digitalcommons.law.villanova.edu/thirdcircuit_2007/1026

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2007 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

**PRECEDENTIAL**


UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 06-2051

MAJOR FRANK MATREALE,
Appellant

v.

STATE OF NEW JERSEY
DEPARTMENT OF MILITARY &
VETERANS AFFAIRS;
NATIONAL GUARD OF THE
UNITED STATES

———————————

On Appeal from the United States District Court
for the District of New Jersey
Civil No. 05-2032
District Judge: The Honorable Joseph E. Irenas

———————————

Argued February 13, 2007

Before: SMITH and FISHER, *Circuit Judges*,
and DIAMOND, *District Judge*[*]

(Filed: May 22, 2007)

William A. Riback, Esq. (Argued)
527 Cooper Street, Second Floor
Camden, NJ 08102

    *Counsel for Appellant*

Michele A. Daitz
Office of Attorney General
of New Jersey
25 Market Street
Richard J. Hughes Justice Complex
Trenton, NJ 08625

Dorothy J. Donnelly (Argued)
Office of United States Attorney
402 East State Street
Trenton, NJ 08608
    *Counsel for Appellee*s

---

[*]The Honorable Gustave Diamond, Senior District Judge for the Western District of Pennsylvania, sitting by designation.

## OPINION

DIAMOND, *District Judge*.

Major Frank Matreale, a commissioned officer in the New Jersey Army National Guard (NJANG) serving under orders issued pursuant to 32 U.S.C. § 502(f)(1)[1], brought suit in the Superior Court of New Jersey against the New Jersey Department of Military and Veterans Affairs (NJDMVA), the overseer of the NJANG, to recover damages for retaliation under the New Jersey Law Against Discrimination (NJLAD). The

---

[1] That section provides in pertinent part:

Under regulations to be prescribed by the Secretary of the Army or Secretary of the Air Force . . . a member of the National Guard may-

(A) without his consent, but with the pay and allowances provided by law; or

(B) with his consent, either with or without pay and allowances;

be ordered to perform training or other duty in addition to that prescribed under subsection (a) [required drills and field training.]

3

National Guard of the United States intervened and the case was removed from state court to the United States District Court for the District of New Jersey. Applying the doctrine of intra-military immunity first enunciated in *Feres v. United States*, 340 U.S. 135, 71 S.Ct. 153, 95 L.Ed. 152 (1950), the District Court granted summary judgment in favor of the NJDMVA.

The issue before us is whether the *Feres* doctrine of intra-military immunity bars a suit raising state law claims for damages for injuries arising from, or in the course of activity incident to, military service brought against a state national guard by a guardsman serving under Title 32. We hold that it does and will affirm the District Court's grant of summary judgment.

## I.

The District Court had jurisdiction pursuant to 28 U.S.C. §§ 1346(b) and 1331. We have appellate jurisdiction pursuant to 28 U.S.C. § 1291. We exercise plenary review over the District Court's grant of summary judgment and employ the same analysis required of the District Court to determine whether there are any issues of material fact that would enable the nonmoving party to prevail. *Kay Berry, Inc. v. Taylor Gifts, Inc.*, 421 F.3d 199, 203 (3d Cir. 2005). Summary judgment is appropriate when "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). At the summary judgment stage, we view all evidence and consider all reasonable inferences in a light most

4

favorable to the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 2513, 91 L.Ed.2d 202 (1986).

## II.

In July of 1999, pursuant to an ongoing official investigation, Matreale provided to Lt. Col. Kent Milliken, his direct supervisor in the NJANG, a statement supporting a female guardsman's accusation that she had been sexually harassed by an NJANG Sergeant Major. An inquiry ultimately concluded that the accuser in fact was sexually harassed.

Matreale, contending that based on his role in the sexual harassment investigation, Milliken and other NJANG officers subsequently engaged in a course of retaliation against him, including, *inter alia*, negative performance evaluations and other disciplinary measures based on accusations that he had engaged in an improper superior-subordinate relationship with the female sexual harassment victim, sought redress in the suit referred to above.

The District Court, in granting summary judgment in favor of the NJDMVA, found that Matreale, serving under Title 32, was a federal employee for immunity purposes and concluded that his state law claims for damages were barred under the *Feres* doctrine of intra-military immunity because the injuries for which he sought recovery arose out of, or were incurred in the course of

5

activity incident to, his military service. The District Court further held that Matreale's requests for reinstatement, promotion and other injunctive or declaratory relief were non-justiciable.

III.

The doctrine of intra-military immunity upon which the District Court relied in dismissing Matreale's damages claims had its genesis in *Feres*, *supra,* a consolidation of three cases in each of which the claimant while on active duty in the United States Armed Forces sustained an injury due to the negligence of others in the armed forces. The Supreme Court held that the federal government was not liable under the Federal Tort Claims Act for injuries to servicemen arising out of, or in the course of activity incident to, military service. 340 U.S. at 146, 71 S.Ct. at 159. The Court noted that "without exception, the relationship of military personnel to the Government has been governed by federal law," *id.*, and that no federal law "has permitted a soldier to recover for negligence, against either his superior officers or the Government he is serving." 340 U.S. at 141, 71 S.Ct. at 157.

Although only alluded to in *Feres*, the Supreme Court subsequently expounded upon the underlying rationale for the intra-military immunity doctrine and described it as being predicated upon:

> [t]he peculiar and special relationship of the soldier to his superiors, the effects of the

6

maintenance of such suits on discipline, and the
extreme results that might obtain if suits . . . were
allowed for . . . negligent orders given or negligent
acts committed in the course of military duty . . . .

*United States v. Brown*, 348 U.S. 110, 112, 75 S.Ct. 141, 143, 99
L.Ed. 139 (1954).

In *Chappell v. Wallace*, 462 U.S. 296, 103 S.Ct. 2362, 76
L.Ed.2d 586 (1983), the Supreme Court expanded the reach of
the *Feres* doctrine to bar a *Bivens*[2] claim for damages brought by
federal servicemen against their federal superior officers alleging
constitutional violations resulting from alleged racial
discrimination in assignments, evaluations and punishment. As
in *Feres*, the Court relied primarily upon "the peculiar and
special relationship" between a soldier and his superiors, and the
potential effects of permitting such lawsuits on military
discipline, in holding that the doctrine of intra-military immunity
barred *Bivens* damages claims. *Chappell*, 462 U.S. at 304, 103
S.Ct. at 2367.

Without exception, in other post-*Feres* cases, the Court

---

[2] In *Bivens v. Six Unknown Named Agents of the Federal
Bureau of Narcotics*, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d
619 (1971), the Supreme Court authorized suits against federal
officials whose actions violate an individual's constitutional
rights.

has adhered to the compelling necessity of maintaining military discipline as the basis for expanding the intra-military immunity doctrine to encompass a variety of claims, against an assortment of defendants, brought by a range of servicemen, for injuries arising out of, or in the course of activity incident to, military service. *See United States v. Stanley,* 483 U.S. 669, 107 S.Ct. 3054, 97 L.Ed.2d 550 (1987) (*Feres* "incident to service" test equally applicable in *Bivens* cases brought by serviceman against military officers and civilians); *United States v. Johnson*, 481 U.S. 681, 107 S.Ct. 2063, 95 L.Ed.2d 648 (1987) (barring FTCA claim against civilian defendant by widow of serviceman killed in rescue mission)*; United States v. Shearer*, 473 U.S. 52, 105 S.Ct. 3039, 87 L.Ed.2d 38 (1985) (barring FTCA claim against United States arising from murder of off-duty serviceman by another serviceman); *Stencel Aero Eng'g Corp. v. United States*, 431 U.S. 666, 97 S.Ct. 2054, 52 L.Ed.2d 665 (1977) (barring claim for indemnification against United States brought by a government contractor in a negligence suit filed by a National Guardsman on a training mission).

Following the Supreme Court's rationale in those cases, in defining the scope of the *Feres* doctrine we too have recognized the adverse impact on military discipline inherent in the judicial review of military orders and have sought to avoid it. In *Jaffee v. United States*, 663 F.2d 1226, 1239 (3d Cir. 1981), we held that the *Feres* doctrine extends to bar a federal serviceman's state law intentional tort claim against his Army supervisors. We recognized two potential consequences of

8

permitting suits for service injuries: their effect on the willingness of military personnel to follow the directions of their superiors and the concomitant chilling effect that the concern of being called into civilian court may have on the discharge of the decision-making duties of military authorities. *Id.* at 1232. Of particular significance to the matter presently before us, we noted in *Jaffee* that "[s]uits founded on state law have the same potential for undermining military discipline as federal tort claims." *Id.* at 1239.

Later, in *Jorden v. National Guard Bureau*, 799 F.2d 99, 104-05 (3d Cir. 1986), we determined that the reasoning in *Chappell*, *supra*, barring *Bivens* damages claims against federal military officers, was equally applicable to a § 1983 action brought by a full-time civilian technician in a state national guard against state military officers in light of the Supreme Court's decision in *Butz v. Economou*, 438 U.S. 478, 98 S.Ct. 2894, 57 L.Ed.2d 895 (1978), which unequivocally held that *Bivens* claims and § 1983 claims are to be treated as identical for immunity purposes. We observed that in *Chappell* the Supreme Court "was laying down a general rule barring damages actions by military personnel against superior officers for constitutional violations, rather than authorizing a fact-specific inquiry." *Jorden,* 799 F.2d at 108.

IV.

In this case, there is no dispute that the alleged harm

9

suffered by Matreale arose from, or in the course of activity incident to, his military service in the NJANG, since his damages allegedly resulted from the conduct of his superior officers in evaluating and disciplining him. A straightforward application of the *Feres* doctrine as it has evolved in the Supreme Court and this Circuit, therefore, would appear to dictate the conclusion reached by the District Court that Matreale's damages claims are barred by intra-military immunity.

Pressed by the overwhelming weight of the foregoing federal precedent, however, Matreale seeks to avoid such a straightforward application of the "federally created" *Feres* doctrine by attempting to convert this case into an exclusive state law matter. In that vein, Matreale argues that, as a *state* guardsman, serving under Title 32, he is a *state* employee suing other *state* employees, also serving under Title 32, under *state* law. Accordingly, his argument goes, the issue of immunity is one which should be addressed and resolved solely under state law; specifically, the question should be whether the NJDMVA is entitled to immunity under the NJLAD, rather than one addressed to federal law in the form of the *Feres* doctrine.

Matreale's entire position rests on his attempt to differentiate between state guardsmen serving pursuant to Title 10, on the one hand, and those serving pursuant to Title 32, on the other. Matreale contends that the *Feres* doctrine applies only to state guardsmen who have been mobilized to active duty under Title 10, but does not apply to guardsmen serving under Title 32,

except to the extent those guardsman are engaged in drills or field training under 32 U.S.C. § 502(a)[3] at the time of the alleged conduct, because guardsmen serving under Title 32 are *state*, as opposed to federal, employees.

Neither party in this case questions the fact that Matreale was serving under orders issued pursuant to 32 U.S.C. § 502(f)(1), and had not been mobilized under Title 10, at the time of the conduct in question[4]. Likewise, there is no dispute that all

---

[3] Title 32 U.S.C. § 502(a) provides in pertinent part:

Under regulations to be prescribed by the Secretary of the Army or the Secretary of the Air Force . . . each company, battery, squadron, and detachment of the National Guard, unless excused by the Secretary, shall

> (1) assemble for drill and instruction, including target practice, at least 48 times each year; and,

> (2) participate in training at encampments, maneuvers, outdoor target practice, or other exercises, at least 15 days each year.

[4] Matreale's unit subsequently was mobilized to active duty in Iraq pursuant to Title 10 on August 19, 2004. However,

11

of the superior officers implicated in the alleged retaliatory behavior against Matreale also were serving under orders issued pursuant to 32 U.S.C. § 502(f). Finally, there is no dispute that at the time of the conduct in question, neither Matreale nor his superiors were engaged in drills or field training under 32 U.S.C. § 502(a). Under these circumstances, Matreale contends that at all material times all relevant parties in this case were serving in a state, not a federal, capacity and, therefore, were state employees subject only to state law on the question of immunity.

Matreale's argument is without merit for several reasons. First, the essential premise of his entire case, *i.e.*, that, for immunity purposes, he was *solely* a state employee, is invalid. Rather, the District Court clearly was correct in holding that Matreale's Title 32 status at the time of the alleged incidents rendered him a federal employee for *Feres* purposes.

First, at the time of the conduct in question, Matreale was serving under orders issued pursuant to *federal* law, specifically, 32 U.S.C. § 502(f). His appointment as an officer was pursuant to the sixteenth clause of section 8, article I of the Constitution, and he began full time service with the national guard in December of 1992 on orders issued pursuant to 32 U.S.C. § 502(f). As the District Court correctly noted, these orders rendered Matreale, at all relevant times, a full time guardsman in

at the time of the conduct at issue in this case, Matreale was serving under Title 32.

12

the National Guard of the United States serving in accordance with the Active Guard Reserve Program.

In addition, this Court previously has applied the *Feres* doctrine to a guardsman serving under Title 32.  In *Loughney v. United States*, 839 F.2d 186 (3d Cir. 1988), we held that a national guardsman on active guard reserve duty status, as Matreale was in this case, was barred by the *Feres* doctrine from suing the government under the Federal Tort Claims Act.   We emphasized there that "[i]t is simply the status of the claimant that is dispositive."  *Id.* at 188.  Because Loughney was a "serviceman" and his injury arose out of or in the course of activity incident to his military service, we concluded that his FTCA claim was barred by the doctrine of intra-military immunity.  *Id.*

Like Loughney, Matreale was a Title 32 serviceman in active guard reserve duty status and his alleged damages arose out of, or in the course of activity incident to, his military service.  The fact that Loughney sued under the FTCA whereas Matreale is suing only under state law is of no consequence.  As we recognized in *Jaffee, supra*, the *Feres* doctrine applies to suits founded on state law as well as to those founded on federal law because state law based suits have the same potential for undermining military discipline as do federal claims. *Jaffee,* 663 F.2d at 1239; s*ee also Coffman v. State of Michigan*, 120 F.3d 57 (6th Cir. 1997) (statutory remedies under Michigan Handicapper's Civil Rights Act are *not* available to uniformed

members of the armed forces including National Guard members).

Matreale's arguments in support of his position that his status as a Title 32 guardsman rendered him a state rather than a federal employee likewise are unpersuasive. First, his reliance on *Perpich v. Department of Defense*, 496 U.S. 334, 110 S.Ct. 2418, 110 L.Ed.2d 312 (1990) is misplaced. There, the Supreme Court held that Congress may authorize that members of the National Guard be assigned to active federal duty for training outside the United States without either the consent of the state governor or the existence of a national emergency. The Court, in addressing the unique "dual enlistment" status of state National Guard members, observed that "[s]ince 1933 all persons who have enlisted in a State National Guard unit have simultaneously enlisted in the National Guard of the United States." 496 U.S. at 345. The Court held that under this dual enlistment system, "a member of the Guard who is ordered to active duty in the federal service is thereby relieved of his or her status in the State Guard for the entire period of federal service." *Id.* at 346.

Matreale misconstrues the *Perpich* holding as implying that unless a state guardsman has been called to active duty under Title 10 and thereby loses his status in the state guard, he at all other times remains *solely* in state, not federal, status. But the plain holding of the Court is to the contrary. Under the holding in *Perpich*, Matreale attained *dual* status as a member of both the

14

National Guard of the United States and the NJANG when he accepted his commission as an officer. 32 U.S.C. §§ 305 and 307; N.J.S.A. 38A:7-4. And while under *Perpich* a state guardsman *loses his state status* when he is called to active duty under Title 10, there is nothing in *Perpich* from which one reasonably may infer, as Matreale argues, that a Title 32 guardsman "loses", or does not have, federal status unless he is mobilized under Title 10 or engaged in drills or field training under 32 U.S.C. § 502(a). On the contrary, the Supreme Court in *Perpich* stressed that its holding that a state guardsman is stripped of his *state* status when he is called to active duty under Title 10 "merely recognizes the supremacy of federal power in the area of military affairs." *Perpich*, 496 U.S. at 351, 110 S.Ct. at 2428. Our conclusion that a state guardsman serving under orders issued pursuant to Title 32, whether serving under § 502(a) or § 502(f), has and retains his federal status, along with his state status, even when he has not been called to active duty under Title 10, likewise recognizes federal supremacy over military affairs.

Matreale also cites to *Phillips v. State Department of Defense*, 98 N.J. 235, 486 A.2d 318 (N.J. 1985). This case too is of little value to his position. In *Phillips,* the New Jersey Supreme Court held that a national guardsman injured while training remained an employee of the state and was not an employee of the federal government, which would have precluded application of the New Jersey state military compensation law. While mentioning the *Feres* doctrine in

15

passing, the court did not rely on the *Feres* rationale because "the statutory interplay between the New Jersey military compensation law and the New Jersey Tort Claims Act was not present in *Feres*." 98 N.J. at 321, 486 at 241. In short, *Phillips* did not authorize a tort suit against the State of New Jersey or any other person or entity by an injured guard member, whether in federal or state status, but merely provided a remedy under the state military compensation law for personal injuries suffered by a guard member in state status .

For the foregoing reasons, we agree with the District Court's determination that Matreale and his supervisors, all of whom were serving under orders issued pursuant to 32 U.S.C. § 502(f) at the time of the conduct in question, were serving in a federal capacity and therefore were federal "employees" for purposes of the intra-military immunity doctrine.

Our conclusion that Matreale and his supervisors were federal (or at best dual federal-state) employees, at the time of the conduct in question is dispositive of his remaining argument that state law, rather than the *Feres* doctrine, should determine the question of immunity.[5] We need look no further than *Feres* for

---

[5] Matreale argues that the NJLAD would not provide immunity for guardsman but suggests in any event that it is for the New Jersey Supreme Court, not this Court, to determine the immunity question under state law. Matreale therefore alternatively seeks certification of this question to the New

16

an unequivocal refutation of this argument.  There, the Supreme Court stressed the point that the "relationship between the Government and members of its armed forces is 'distinctly federal in character'" and that "without exception, the relationship of military personnel to the Government has been governed by federal law."  *Feres*, 340 U.S. at 143-44, 146; 71 S.Ct. 158, 159 (citation omitted).  The court explained:

> To whatever extent state law may apply to govern the relations between soldiers or others in the armed forces and persons outside them or nonfederal government agencies, the scope, nature, legal incidents and consequence of the relation between persons in service and the Government are fundamentally derived from federal sources and governed by federal authority.

340 U.S. at 143-44, 71 S.Ct. at 158 (*quoting United States v. Standard Oil Co.*, 332 U.S. 301, 305-06, 67 S.Ct. 1604, 1607, 91 L.Ed. 2067 (1947)).

As stated above, at the time of the conduct giving rise to his suit, Matreale and his supervisors were members of the

Jersey Supreme Court.  In light of our holding that Matreale is a federal employee for immunity purposes and that this case is governed by federal law, the issue of certification of the question to state court is moot.

17

military serving in a federal capacity under orders issued pursuant to Title 32. As a result, federal authority as set forth in *Feres* and its progeny, rather than state law, governs the issue of immunity. And because the alleged harm suffered by Matreale arose from, or in the course of activity incident to, his military service in the NJANG, his claims for damages are barred under the intra-military immunity doctrine.

Our holding in this case is consistent with, and a logical corollary to, our prior precedent in the area of intra-military immunity. We previously have applied the *Feres* doctrine in *Loughney* to a Title 32 guardsman suing under federal law. We also have applied the doctrine in *Jaffee* to a federal active duty serviceman suing under state law. It is both reasonable and appropriate to apply the doctrine to Title 32 guardsman suing under state law and thereby to make immunity co-extensive for all dual-status national guardsmen. A concern for the disruption of the unique relationship of military personnel to their superiors and to other military personnel that likely would result if one could hale another into court as a result of activity incident to military service is equally as compelling in the context of lawsuits brought by Title 32 guardsmen, whether serving under § 502(a) or § 502(f), as it is in the context of lawsuits brought by Title 10 guardsmen.

Accordingly, for the foregoing reasons, the District Court's finding that Matreale's damage claims founded on state law are barred by the *Feres* doctrine of intra-military immunity

18

doctrine will be affirmed.

## V.

The District Court also held that Matreale's requests for promotion and other injunctive relief arising from his negative officer evaluations are non-justiciable. Matreale did not challenge this aspect of the District Court's decision in his brief on appeal and, therefore, he has waived it. *Laborers' Int'l Union of N. Am. v. Foster Wheeler Corp.*, 26 F.3d 375, 398 (3d Cir. 1994). Accordingly, the District Court's grant of summary judgment in favor of the NJDMVA as to Matreale's request for injunctive relief also is affirmed.

## VI.

For the foregoing reasons, we agree with the District Court that there are no genuine issues of material fact in the above matter and that the NJDMVA is entitled to judgment as a matter of law. Accordingly, we will affirm the decision of the District Court granting summary judgment in favor of the NJDMVA.

SMITH, *Circuit Judge, concurring*.

I join in its entirety the excellent opinion of my esteemed colleague, Judge Diamond. In light of the purposes of the doctrine as well as its application by the Supreme Court and

several courts of appeals–including this Court–the majority has aptly shown why we will apply intra-military immunity to bar the damages claims presented here. I write separately only to note that this Court, again and again, has dutifully applied the *Feres* doctrine in spite of perceived injustice and possibly in opposition to the actual text of the FTCA, but noting that we are bound to do so unless and until the Supreme Court or Congress tells us otherwise.[6]

---

[6]*See Richards v. United States*, 176 F.3d 652, 657 (3d Cir. 1999) ("It is because *Feres* too often produces such curious results that members of this court repeatedly have expressed misgivings about it."); *Richards v. United States*, 180 F.3d 564, 565 (3d Cir. 1999) (Rendell, J., dissenting from a denial of a petition for rehearing en banc) ("I urge the Supreme Court to grant certiorari and revisit what we have wrought during the nearly fifty years since the Court's pronouncement in *Feres*...."); *O'Neill v. United States*, 140 F.3d 564, 566 (3d Cir. 1998) (Becker, C.J., statement sur denial of the petition for rehearing) ("I urge the Supreme Court to grant *certiorari* and reconsider *Feres*."); *Loughney v. United States*, 839 F.2d 186, 188 (3d Cir. 1988) ("We, like the district court, are constrained by the decisions of the Supreme Court and must adhere to the view that Court has expressed."); *Estate of Martinelli v. United States, Dep't of Army*, 812 F.2d 872, 874 (3d Cir. 1987) (stating that "any relaxation in the *Feres* doctrine must come from Congress"); *Heilman v. United States*, 731 F.2d 1104, 1112 (3d Cir. 1984) ("The existence of a system by which soldiers, veterans, and their families could receive some compensation for harm they suffered in the service of their country clearly

influenced the original decision to preclude suits of the sort before us on review. There is reason to believe that this system has broken down." (citation omitted)); *Hinkie v. United States*, 715 F.2d 96, 97 (3d Cir. 1983) (conceding that "we have no legal authority, as an intermediate appellate court, to decide the case differently"); *Mondelli v. United States*, 711 F.2d 567, 568 (3d Cir. 1983) (stating that "we acknowledge the result to be a harsh one," but nonetheless barring suit under the doctrine of intra-military immunity); *Jaffee v. United States*, 663 F.2d 1226, 1239 (3d Cir. 1981) (en banc) ("This is a difficult and troubling decision."); *Thomason v. Sanchez*, 539 F.2d 955, 957 (3d Cir. 1976) ("We previously expressed reservations about the continuing validity of the broad *Feres* doctrine. Upon reconsideration we reiterate that concern; as we noted there, however, we are powerless to jettison *Feres* or to dislodge it sufficiently to create an exception for vehicular collisions involving servicemen." (citation omitted)); *Peluso v. United States*, 474 F.2d 605, 606 (3d Cir. 1973) (per curiam) (questioning the logic of the *Feres* decision but applying it to the facts of the case). It is no wonder that Justice Scalia in his *Johnson* dissent bluntly stated that "*Feres* was wrongly decided and heartily deserves the 'widespread, almost universal criticism' it has received." *Johnson v. United States*, 481 U.S. 681, 700-01 (1987) (Scalia, J., dissenting) (quoting *In re "Agent Orange" Product Liability Litigation*, 580 F.Supp. 1242, 1246 (E.D.N.Y. 1984)); *see also Costo v. United States*, 248 F.3d 863, 869 (9th Cir. 2001) (reluctantly concluding that "until Congress, the Supreme Court, or an en banc panel of this Court reorients the [*Feres*] doctrine, we are bound to follow this well-worn path"); *id*. at 869 (9th Cir. 2001) (Ferguson, J., dissenting)

The tension between the decision in *Feres* and the FTCA is obvious.  As Justice Scalia stated in his oft-cited *Johnson v. United States* dissent, the exception in § 2680(j) illustrates that "Congress specifically considered, and provided what it thought needful for, the special requirements of the military.  There was no proper basis for [the Supreme Court] to supplement—i.e., to revise—that congressional disposition."  481 U.S. 681, 693 (1987) (Scalia, J., dissenting); *see* 28 U.S.C. § 2680(j) (excluding, under the FTCA, "[a]ny claim arising out of the *combatant activities* of the military or naval forces, or the Coast Guard, *during time of war*") (emphasis added).  In the five-plus decades since the *Feres* decision, the Supreme Court has expanded the doctrine of intra-military immunity in a variety of circumstances.  *See, e.g.*, *Chappell v. Wallace*, 462 U.S. 296 (1983) (*Feres* doctrine used to bar claims that were not even against the United States or based on the FTCA); *United States v. Shearer*, 473 U.S. 52 (1985) (barring an FTCA claim of a soldier kidnapped and murdered when off-base and off-duty by another soldier).

The doctrine of intra-military immunity remains ripe for reconsideration by the Supreme Court in light of the questionable foundation upon which it stands.  Prior panels of this Court, of

(challenging the constitutionality of the *Feres* doctrine on equal protection and separation of powers grounds).

22

other courts of appeals, and numerous commentators have questioned the soundness of the *Feres* doctrine. A long line of Supreme Court cases, beginning with *Feres v. United States*, have been decided in seeming opposition to Congress' clearly expressed intent in the FTCA as to the scope of intra-military immunity. *Feres* and its progeny ought to be reexamined.